[Civ. No. 7972. Second Appellate District, Division One.—June 13, 1934.]

CALIFORNIA UNITED STATES BOND AND MORT-GAGE CORPORATION (a Corporation), Appellant, v. DORA GRODZINS, Respondent.

Edward W. Moses for Appellant.

S. W. Newman for Respondent.

HAHN, J., *pro tem.*—This appeal is from an order releasing an attachment which plaintiff and appellant had caused to be issued and levied on funds of defendant and respondent on deposit with the Fidelity Savings and Loan Association in Los Angeles. ■ But one question is involved, which appellant states as follows: "The point involved in this appeal is whether an attaching creditor can subject to attachment the excess of the proceeds of life insurance over and above the amount exempted by law, without succeeding in attaching the entire proceeds of the policy, when all of the proceeds of the insurance which he has not succeeded in attaching have already been consumed and applied by the beneficiary to her own living expenses and support of minor children."

It appears from the record that defendant received upon the death of her husband the sum of $10,000 in payment of a life insurance policy issued upon the life of her husband. Of this sum $5,000 was deposited with the Fidelity Savings and Loan Association, while the remaining $5,000 was expended by defendant for the maintenance and support of herself and minor children. The annual premium paid on the policy was $558.

Section 690 of the Code of Civil Procedure, subdivision 18, provides as follows: "The following property is exempt from execution or attachment, except as herein otherwise specially provided: . . . 18. (Life insurance benefits.) All moneys, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars, and if they exceed that sum a life exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges and immunities so accruing or growing out of such insurance that said five hundred dollars bears to the whole annual premiums paid."

It is conceded by respondent that at the time the $10,000 was paid to her by the insurance company, under the provi-

sions of the section above quoted, only $8,960.57 was exempt from execution, leaving $1,039.43 subject to levy by her creditors. The situation, respondent contends, had changed when the attachment was levied, in this, that she had expended $5,000 of the insurance money and only had $5,000 left, which amount, being less than the original exempt part of the whole, should all be held exempt from attachment.

Respondent in her brief presents neither authorities supporting her position nor considerations or reasoning that justify this conclusion. Appellant, while citing cases which, it is urged, are persuasive in support of a conclusion contrary to that asserted by respondent, and does offer some considerations in support of its contention that $1,039.43 of the amount on deposit with the Fidelity Savings and Loan Association should be held liable to its levy, cites to us no cases where this question has been decided or even considered.

Prior to 1901 the subdivision of section 690 of the Code of Civil Procedure, providing for exemption of proceeds from life insurance, read: ''All moneys, benefits, privileges or immunities accruing or in any manner growing out of any life insurance on the life of the debtor, if the annual premiums paid do not exceed five hundred dollars.'' Influenced undoubtedly by the decision of the Supreme Court in the *Estate of Brown*, 123 Cal. 399 [55 Pac. 1055, 69 Am. St. Rep. 74], handed down in 1899, wherein it was held that no part of the proceeds from life insurance where the annual premium exceeded $500 was exempt from execution, the legislature in 1901 amended this section so as to provide for exemption of such portion of the proceeds from life insurance, when the total annual premiums paid exceed $500, as said sum of $500 bears to the total premiums paid.

In determining the amount of proceeds from life insurance that would be exempt from the claim of creditors, the legislature evidently concluded that the amount so fixed would meet the needs for which the statute of exemptions was enacted. If respondent's contention is sound, that because the amount of insurance money she has left of the $10,000 received is less than the $8,960.57 fixed by statute as the portion exempt out of the full sum received, because forsooth she saw fit to expend $5,000 of the insurance fund received before the attachment, the result would be that

defendant would have the full $10,000 available for the purposes for which the legislature determined not to exceed $8,960.57 would be exempt. If this theory should prevail, it would result that no matter how large a sum was received from life insurance, unless the creditor succeeded in levying upon it the moment it was paid, the entire amount could be and undoubtedly would be so disposed of that the amount remaining that could be reached by execution would always be less than the amount exempt. Surely such a result was not intended by the legislature. When the purpose for which the amendment was evidently enacted is taken into consideration, it would seem that the better reasoning supports the conclusion that when the exempted portion of the $10,000 insurance money, to wit: $8,960.75, has been set apart, as it were, to the beneficiary to serve the uses intended by the act exempting it from the claim of creditors, the balance of the $10,000 whenever and wherever found should be liable for the beneficiary's debts. Nor should the fact that she has expended a portion of the exempted sum affect the status of the balance of the money received by her. If, as it must be conceded, $1,039.43 of the insurance money was liable to creditors' claims at the time it was received by the beneficiary, it would seem reasonable and logical that this amount would, as it were, be ear-marked as available for the same purposes until exhausted by creditors' claims or otherwise used or expended.

In our review of the cases cited, as well as others examined in our consideration of this question, we find nothing in the conclusions arrived at, or the considerations established, that conflicts with the views here expressed. Rather, it may be fairly said that the considerations which we feel justify the conclusion reached find more support in the books than does the contrary view.

For the reasons stated, the order is reversed.

Inasmuch as it appears from the record that the material facts in the case will be the same, if a new trial were had, it would serve no useful purpose to so direct. It is therefore ordered that the trial court make findings and render judgment in favor of plaintiff and appellant in accordance with the views herein expressed.

Houser, Acting P. J., and York, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 9, 1934.