In re Thomas R. HADDAD, Debtor.

Thomas R. HADDAD, Appellant,

v.

Janet CHUBB, Appellee.

BAP No. NV–81–1053–VKL.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued June 19, 1981.

Decided Nov. 18, 1981.

Daniel C. Bowen, Lionel, Sawyer & Collins, Reno, Nev., for appellant.

Janet L. Chubb, pro se, and Chubb & Silverman, Sparks, Nev., for appellee.

Before VOLINN, KATZ and LASAROW, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

The debtor, Thomas R. Haddad, 9 B.R. 368 (Bkrtcy.D.Nev.) appeals a decision of the court below denying his claims of exemption to some $400,000 of life insurance proceeds.

On commencement of this chapter 7 case, Haddad retained said balance of the lump sum cash settlement paid him as beneficiary of a life insurance policy taken out by him on the life of his brother.[1] The exemption claim is based on a contention that § 10171 of the California Insurance Code authorizes the insured to provide that proceeds payable to the beneficiary should not be subject to claims of the latter's creditors.[2] Alternatively, he claimed as exempt, $32,614.02 of that amount, pursuant to § 690.9(a) of the

---

1. The debtor and his brother, Abe Haddad, were partners in a farming enterprise, Golden H Packing Co. This entity was a partner of Le Var Murdock in another partnership called Golconda Farms. As part of their business operations, the brothers purchased life insurance policies, effective January 1, 1979 wherein each was the beneficiary of the other. Each brother paid, by deductions from the draws from Golconda, premiums for the policies. Abe Haddad died by drowning on February 19, 1979. On March 28, 1979, the insurer issued Thomas Haddad a check in the amount of $751,561.64. On the date he filed his chapter 7 petition, the

debtor had remaining of that sum approximately $400,000.

2. § 10171 states:
"Any life policy or other agreement relating to the holding or payment of the proceeds of a life insurance policy may provide that the proceeds thereof or payment thereunder shall not be subject to transfer, anticipation, or commutation or encumbrance by any beneficiary, and shall not be subject to the claims of creditors of any beneficiary or any legal process against any beneficiary."

California Code of Civil Procedure.[3] The trustee/appellee herein, objected to both claims, contending that neither statute provided a basis for exemption.

## I.

We consider first Haddad's theory under § 10171.

The court below, in effect, held that § 10171 is designed to prevent anticipatory alienation and attachment by creditors. Therefore, the statute, despite inclusion of the term "proceeds", affords no protection to proceeds paid to the beneficiary.

 It is clear from a reading of this provision that whatever protection may be afforded to the proceeds of a life insurance policy, it is not automatic. There must be contractual language in the policy specifically providing such protection. The policy or supplemental agreement thereto "... may provide that the proceeds thereof or payments thereunder shall not be subject to ... the claims of creditors of any beneficiary or any legal process against any beneficiary."[4] The threshold question, then, is whether the policy at issue so provides. Our reading of its term fails to disclose any such provision.

The debtor filed his claim under the policy on March 16, 1979 electing what he described as "the option of a cash settlement". However, the "settlement options" under the policy are limited to eight different annuity payment schedules.[5] The introductory paragraph to the description of these "settlement options" states: "Settlement under an option. All or part of the proceeds of this policy otherwise payable in one sum may be applied under one of the following options:". Haddad's argument under § 10171 focuses on the last paragraph of the "settlement options" page. This paragraph states:

"Protection Against Creditors—Proceeds applied *under these settlement options* will not be subject to claims of creditors nor to legal process, to the extent permitted by law. Unless the election provides otherwise, the beneficiary may not assign, pledge or anticipate the proceeds." (Emph. supp.)

The provisions of this paragraph are directed only to proceeds paid out in accordance with one of the eight "settlement options". It is clear that Haddad did not apply the proceeds of the policy to any of these options.[6] All the proceeds were payable in one sum, which he chose to receive in toto in lieu of application to one of the "settlement options". In sum, § 10171 is not operative because the policy itself does not provide protection from claims of the beneficiary's creditors to a lump sum cash settlement.[7] We thus agree with the result reached by the court below, albeit for different reasons.

3. These sections read:
"690.(a): Except as otherwise specifically provided, the property mentioned in Sections 690.1 to 690.29, inclusive, is exempt from execution when claim for exemption is made to the same by judgment debtor or defendant as hereinafter in Section 690.50 provided. 690.9(a): All moneys, benefits, privileges, or immunities, accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars ($500), or if they exceed that sum as like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges, and immunities so accruing or growing out of such insurance that such five hundred dollars ($500) bears to the whole annual premium paid."

4. *Supra*, n.2.

5. These "settlement options" range from leaving the proceeds on deposit with the insurer and then receiving the proceeds and accumulated interest at the end of a period mutually agreed upon, to applying the proceeds to the purchase of an annuity income plan with the insurer.

6. The conclusion that the cash settlement here does not come within the category of proceeds applied under a settlement option is further buttressed by another provision of the policy. In the "Method of Payment" section of the policy, a "one sum payment" is not labelled an "option".

7. Since our holding is that operation of § 10171 was not effected by the provisions of the policy, we express no opinion on the extent to which the statute allows a life insurance contract to provide for exemption of proceeds paid thereunder.

## II.

We next consider Haddad's argument that a portion of the $400,000 remaining proceeds is exempt, based on C.C.P. § 690.9(a).[8] The court below relied solely on *California United States Bond and Mortgage Corp. v. Grodzins*, 139 Cal.App. 240, 34 P.2d 192 (1934), concluding that whatever exemption Haddad had under § 690.9(a) was exhausted by his expenditure of some $351,561.64 of the proceeds initially received.

In *Grodzins*, the judgment debtor had received a $10,000 cash settlement of a life insurance policy on her deceased husband's life. Of that amount, she spent $5,000 on living expenses for herself and her minor children. A creditor had levied on the $5,000 which remained in a savings account. Since the policy's annual premium had exceeded $500, the formula provided by the statutory predecessor to § 690.9(a) resulted in a determination that $8,960.75 of the $10,000 she had received was exempt and $1,039.43 was non-exempt. The widow contended that since the balance of the proceeds was less than the exemption allowable, the levy must fail. However, the court concluded:

> "If, As it must be conceded, $1,039.43 of the insurance money was liable to creditors' claims at the time it was received by the beneficiary, it would seem reasonable and logical that the amount would, as it were, be earmarked as available for the same purposes until exhausted by creditors' claims or otherwise used or expended."

This reasoning transforms the proceeds of life insurance, in excess of the exempt amount, into a fund to be held in some kind of trust by the beneficiary, as if already levied upon, for the general creditors until they obtain writs of attachment or execution, unless the funds "are otherwise used or expended." (*Grodzins*).

However, the question of the exempt nature of property held by a judgment debtor does not arise until there is a levy. Nothing in § 690.9(a) requires the debtor to exercise the statutory right of exemption prior to such levy. Indeed, were the entire sum to have been expended prior to levy, the non-exempt portion of the sum would be beyond the reach of any creditor as indicated by the term "otherwise used or expended" in *Grodzins*. See also *Booth v. Propp*, 214 Iowa 208, 242 N.W. 60, 81 A.L.R. 919 (1932). To hold otherwise could, in some circumstances, as indicated by argument in this case, invite litigation as to prior disposition of the funds in order to ascertain whether the debtor had paid creditors or had expended the exempt allotment on uses contemplated by the statutory exemption. Such litigation is not called for by the statute, nor is the more evident consequence of *Grodzins*, which would encourage improvident acceleration of the use of insurance proceeds in order to avoid interception of the exemption privilege. The foregoing limitations are inconsistent with the purpose of exemption statutes which are enacted to provide debtors with the immediate use of specific property free from the claims of creditors.

In any event, we do not view *Grodzins* as conclusive or convincing. Two subsequent intermediate California appellate court decisions attenuate its authority. *Medical Finance Ass'n v. Rambo*, 86 P.2d 159 (Ct.App. Cal.1938) and *Snyder v. Swenson*, 311 P.2d 644 (Ct.App.Cal.1957). The Supreme Court of California has not yet addressed this issue.

In conclusion, the trial court's decision with respect to the claim for total exemption, based on § 10171 of the California Insurance Code, is AFFIRMED.

However, the debtor should be allowed an exemption of $31,583.48, pursuant to C.C.P. § 690.9(a). In this regard, the decision of the trial court is REVERSED and remanded for proceedings consistent herewith.

8. The amount argued for as exempt under § 690.9(a) is $31,583.48. This figure bears the same ratio to $751,561.64, the total proceeds, as $500 bears to $11,898.00, the annual premium on Haddad's policy.