**In re Thomas R. HADDAD, Debtor.**

**Caroline HADDAD, Appellant,**

**v.**

**Thomas R. HADDAD, Appellee.**

**BAP No. NV 81-1092 EHV.**
**Bankruptcy No. NV 80-00343.**
**Adv. No. 80-0053.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Nov. 18, 1981.

Decided June 15, 1982.

Filed July 7, 1982.

[redacted]

Vernon A. Kalshan, Vizzard, Baker, Sullivan & McFarland, Bakersfield, Cal., for appellant.

Dan C. Bowen, Lionel, Sawyer & Collins, Reno, Nev., for appellee.

Before ELLIOTT, HUGHES and VOLINN, Bankruptcy Judges.

ELLIOTT, Bankruptcy Judge:

Plaintiff appeals from a judgment of the trial court holding the debtor's indebtedness to her to be dischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). She has not appealed from the court's judgment overruling her objections to discharge brought under 11 U.S.C. § 727.

The question presented is, is the surviving partner's failure to disclose his possession of $1,000,000 in partnership funds at a time when the deceased partner's widow is asked to pay a partnership debt, a false representation or fraud under 11 U.S.C. § 523(a)(2)? We hold that the debtor did have a duty of disclosure and reverse, 10 B.R. 276.

The plaintiff, Caroline Haddad, is the widow of Abe Haddad. Abe Haddad was Tom Haddad's brother and partner in Golden H. Packing Company (GHP), a farming related business in Kern County, California.

Abe died on February 28, 1979. Abe's will named his father, A. G. Haddad, as executor and set up a trust under the terms of which Caroline was to receive $500 per month. Under the terms of the GHP buy-sell agreement, the partnership, GHP, was obligated to purchase from the estate of a deceased partner the deceased partner's interest. The court below found the agreement to be ambiguous as to the price to be paid for that interest.

The buy-sell agreement was funded by life insurance. Upon Abe's death, $1,000,-000 was paid by the life insurance company to the beneficiary, GHP. Tom used the insurance proceeds to purchase certificates of deposit in his own name. None of the proceeds were paid to Abe's estate as required by the GHP buy-sell agreement.

Prior to Abe's death, GHP borrowed $500,000 from the Bank of America in Arvin, California to purchase a 50% interest in a Nevada farming business known as Golconda Farms. Abe and the debtor signed the note on behalf of GHP and Caroline guaranteed Abe's obligation to the bank.

Tom and Abe also took out life insurance in connection with Golconda Farms. Each brother was the beneficiary and owned the policy of the life of the other. Tom collected $751,561 on the insurance on Abe's life. This money was also used to purchase certificates of deposit in Tom's name.

In July of 1979 the Bank of America was demanding payment of the $500,000 note. At that time Caroline was asked to attend a meeting with Tom at the office of Anderson & Stronge to discuss the financial affairs of GHP and Golconda.

The court below found that Anderson and Davis Stronge, the attorney who drafted the GHP buy-sell agreement, used a joint letterhead which might be understood to make them partners but that their true relationship was unknown. Although not

reflected in the opinion of the trial court, the record is clear that:

(1) the two attorneys had their office in Bakersfield, California under the name of Anderson & Stronge;

(2) that Anderson & Stronge represented both Abe and Tom in connection with their farming operation and in litigation;

(3) that Tom considered Stronge to be his attorney; and

(4) that Stronge was in attendance at the pivotal July 1979 meeting.

Attorney William Anderson represented the executor of Abe's estate. At the July 1979 meeting, Anderson told Caroline that Abe's estate did not have the funds to pay Abe's one-half of the $500,000 note to the bank and if she would pay Abe's one-half, Tom would pay his one-half. Tom did not tell Caroline that he had collected $1,750,000 in insurance proceeds by reason of Abe's death and at the time still had $1,500,000. It seems clear from the record that Caroline was not represented by counsel at the meeting.

The unspoken representation by Anderson, adopted by Tom's silence, at the July meeting was that GHP was without funds to pay the $500,000 note.

Caroline paid $250,000 plus interest to the Bank of America. Tom paid the other one-half and, to add insult to injury, paid it out of the insurance proceeds.

The court below erred in holding, without qualification, that:

Fraud or a false representation cannot be implied from a failure to volunteer information.

Witkin states (Torts p. 2724) that "failure to disclose [material facts known to one party and not the other] is not actionable fraud unless there is some fiduciary relationship giving rise to a duty to disclose." See also *In re Harris*, 458 F.Supp. 238, 242 (D.Or.1978): "Fraud may consist of concealment . . . of material facts . . . , particularly when the parties stand in a confidential or fiduciary relationship to one another."

California Corp.Code § 15021 provides in part:

(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

The GHP buy and sell agreement provides for continuance of the partnership business upon the death of a partner. The agreement further provides that the proceeds of the insurance on the life of the deceased partner were to be paid to the representative of the estate of the deceased partner to be applied to the purchase price for the interest of the deceased partner.

When Tom withdrew the insurance proceeds from GHP and deposited them in his own name, he held those funds as a trustee under California Corp. Code § 15021. As a fiduciary, he owed a duty of fair dealing and full disclosure to Abe's estate and to California as Abe's widow and beneficiary of his estate.

*Estate of Witlin*, (1978) 83 Cal.App.3d 167, 175, 147 Cal.Rptr. 723:

Appellants owed such a duty to plaintiff as the widow and executrix of their deceased partner in purchasing from her their deceased partner's interest in the partnership. (See Corp.Code § 15020.) Throughout the transaction they were bound to act toward her 'in the highest good faith' and they were forbidden to obtain any advantage over her in the matter by, among other things, the slightest concealment.

*Sibert v. Shaver*, 111 Cal.App.2d 833, 839, 245 P.2d 514:

A surviving partner is a trustee of the trust inherited from his decedent, and of the assets of the partnership. As such he owes the maximum of good faith and personal confidence to the decedent and to the latter's beneficiaries.

Therefore, Tom had a duty to disclose the insurance proceeds to Caroline at the time she paid a partnership debt to the bank. The fact that because of an error the buy-

sell agreement (drafted by Tom's attorney) was ambiguous as to the purchase price to be paid for the deceased partner's interest, does not get Tom off the hook as a fiduciary. Caroline was entitled to know all the facts, not just those facts Tom deigned to tell her. Nor is Tom's duty of disclosure excused by the fact that Caroline signed the buy-sell agreement (which referred to the insurance) some five months before her husband's death.

The court below made no finding on reliance by Caroline on the tacit representation that the partnership was without funds to pay the bank note. However, it is not necessary to remand because we can discern from the record before us that Caroline did rely in paying approximately $275,000 to the bank. *Canadian Transport Co. v. Irving Trust Co.*, C.A.2 (1977) 548 F.2d 53; *Swanson v. Levy*, C.A.9 (1975) 509 F.2d 859.

The court below found that Tom did not have a bad motive in that he intended to and did use the insurance money to keep the farming operation going and pay GHP and Golconda debts. However, we note that when Tom filed bankruptcy some 11 months later, he still had $400,000 which he claimed as exempt as life insurance proceeds, *In re Haddad*, 15 B.R. 903 (Bkrtcy. App.).

The debtor knowingly and willfully concealed from Caroline the existence of $1,500,000 in cash or equivalent, approximately $1,000,000 of which belonged to GHP, to induce her to pay $250,000 plus interest on a GHP liability for which she was only secondarily liable. Caroline reasonably relied and has been damaged. The liability is not dischargeable under 11 U.S.C. § 523(a)(1). Appellant, in argument, relied entirely on § 523(a)(2) and we deem it unnecessary to discuss the issues under § 523(a)(4) and (6).

Reversed and remanded to the trial court for entry of a judgment in favor of the plaintiff.