**In re David Henderson BROWN, M.D., aka, dba David Henderson Brown, Debtor.**

**Bankruptcy No. 87–00238.**

United States Bankruptcy Court, D. Hawaii.

June 23, 1988.

Robert Matsumoto, Honolulu, Hawaii, pro se.

Anthony Rankin, Enver W. Painter, Jr., Wailuku, Hawaii, for creditor Clifford Bronson.

Thomas Leuteneker, Presley Pang, Honolulu, Hawaii, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: ORDER TO SHOW CAUSE

JON J. CHINEN, Bankruptcy Judge.

On April 26, 1988, this Court sua sponte issued an Order to Show Cause, premised on the appearance that the granting of a discharge in this case would constitute a substantial abuse of the Bankruptcy Code.

A hearing was held on May 24, 1988, at which time the Trustee, Robert Matsumoto, Esq. appeared on behalf of himself, Anthony Rankin, Esq. appeared on behalf of Creditor Clifford Bronson ("Bronson"), and Thomas Leuteneker, Esq. and Presley Pang, Esq. appeared on behalf of Debtor. At the conclusion of the hearing, the Court took the matter under advisement.

The Court having reviewed the pleadings and the record, and having heard arguments of counsel, enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Bronson was a newspaper reporter on Maui. On July 16, 1980, Bronson went to Debtor, an ophthalmologist, for routine cataract surgery. As a result of Debtor's negligence, Mr. Bronson suffered a total and permanent loss of vision in his right eye.

2. On June 3, 1982, Bronson filed a complaint in the Court of the Second Circuit, State of Hawaii against Debtor, alleging medical malpractice. The matter was tried before a jury and, on April 27, 1984, the jury found Debtor negligent in the care and treatment of Bronson and returned a verdict for Bronson in the amount of $386,-200.00. This included substantial medical bills and lost earnings as well as general damages for loss of eyesight. On June 12, 1984, the state court entered a judgment in the amount of $474,616.43 in favor of Bronson based on the jury's verdict. While the lawsuit was pending, Bronson lost the sight of his left eye to an unrelated infection and he is now totally blind.

3. At the time that he operated on Bronson, Debtor carried no medical malpractice insurance. Thus, Bronson attempted to execute on his judgment by garnisheeing Debtor's retirement accounts. The Debtor, in turn, on August 1, 1984, moved to discharge the said garnishees on the grounds "that the funds sought to be garnished are

funds in money purchase pension plans established by the United States government, that the funds are not garnishable under the provisions of the Plans and federal law, and that the funds are not payable to either defendant at this time." On January 30, 1985, the state court issued an order discharging the garnishees administering Debtor's pension plans.

4. On March 25, 1987, Debtor filed this Voluntary Petition under Chapter 7 in the Bankruptcy Court, District of Hawaii.

5. Debtor was domiciled in Hawaii on the date that he filed his petition, and elected the "state law" exemptions pursuant to 11 U.S.C. § 522(b)(2). These assets include the following:

   a. Funds in the IRA Account No. HO 1864–840

   b. Funds in the KEOGH Account No. HO 1864–8237

   c. Funds in the Money Purchase Pension Plan (Employer I.D. No. 990177405)

   d. Lot No. 3–A of the Hale Nani Tract, Lihue, Kauai, Hawaii

   e. Approximately 54 acres of land located in Trigg County, Kentucky

   f. 501 shares of common stock in the Debtor's Maui Optical Company, Inc.

   g. Commercial real property located in Wailuku, Maui, Hawaii

   h. Real property and residence located at Waihee, Wailuku, Maui, Hawaii

6. A determination letter dated February 3, 1986 from the Internal Revenue Service ("IRS") indicates that the Debtor's Money Purchase Pension Plan (Employer I.D. No. 99–177405) adopted May 2, 1978 and amended June 14, 1985 conforms to the requirements of the governing portions of the Internal Revenue Code.

7. The IRA and KEOGH plans maintained for the Debtor at Charles Schwab & Co., Inc. qualify under the Internal Revenue Code.

8. A schedule of the contributions made to the Debtor's IRA, KEOGH and Money Purchase Plan indicates that a sum total of $6,000.00 was contributed to the various plans within three years prior to the filing of the bankruptcy petition.

9. The Lihue, Kaui property, Lot 3–A of the Hale Nani Tract, was acquired by the Debtor and his wife as tenants by the entirety on May 31, 1984. They contracted to buy that property by an Agreement of Sale dated August 15, 1979 and to take title as Tenants by the Entirety.

10. The Kentucky property is held by the Debtor and his wife "jointly and equally for life, with the remainder in fee simple to the survivor of them" pursuant to a Deed of Conveyance dated May 21, 1974.

11. The 501 shares of stock in Maui Optical Company, Inc. are held by the Debtor and his wife as tenants by the entirety, as indicated on the face of the stock certificate dated July 12, 1977.

12. The Debtor's residence located at Waihee, Wailuku, Maui was conveyed to the Debtor and his wife as tenants by the entirety by Deed dated July 5, 1979.

13. The Wailuku commercial property was conveyed to the Debtor and his wife as tenants by the entirety by Indenture dated October 11, 1974.

14. In the Amended Schedule of Property of Debtor filed herein on November 19, 1987, the Debtor values all of the properties listed therein in excess of $722,000.00 with nothing owed on the real properties. And, Debtor lists the value of the real properties, not at market value, but at tax assessed value.

15. The petition also lists rental income of $35,542.00 earned in 1985 and approximately $28,000.00 in 1986.

16. In the petition, Debtor lists only one debt: Bronson's judgment against Debtor. There are no other creditors scheduled by the Debtor. The IRS subsequently filed a Proof of Claim as an unsecured priority creditor for the sum of $3,173.81.

17. On at least one of his income tax returns, the Debtor claimed sole ownership of all of the 501 shares of common stock in Maui Optical Company, Inc.

18. In the money purchase pension plans established by the Debtor, the Debtor is a beneficiary as well as a co-trustee,

along with his wife. The Debtor also is a plan administrator and serves on the pension committee.

19. With respect to one of the money purchase pension plans, as early as July 16, 1984, if not earlier, the Debtor had $50,-000.00 approximately, if not more, with a financial institution in Switzerland called Ferrier Lullin & Cie S.A. Geneve.

20. From these money purchase pension plans, the Debtor made loans either to himself and/or his wife or to third parties as follows:

a. $60,000.00 in 1984.

b. $31,657.85 on or about February 18, 1987.

21. The Debtor and his wife also made a substantial payment in 1984 on the Kauai property of $60,000.00 which was borrowed from the money purchase pension plan. The $60,000.00 was never returned to the money purchase pension plan.

22. Debtor has not paid a cent to Bronson and has not made any effort to make any payment to Bronson. But he continues to expend $422.00 per month for the rental of an automobile and $300.00 a month for recreation.

23. Debtor is an able-bodied medical doctor, with a specialty in opthamology. He does not reveal the amount of profits from his practice, for he states that all the profits go to the payment of rents to his wife and himself as tenants by the entirety. Debtor and his wife own the property in which his office is located. In addition to his income from his medical practice, Debtor receives other income, including rent from his rental units.

24. Debtor's counsel acknowledged that the purpose of enactment of the tenancy by the entirety statute was primarily to keep the residence of a family exempt from the creditor of a single spouse so that the family will not be thrown out on the street and become destitute.

25. To the extent that the Findings of Fact constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

1. Bronson is the sole creditor listed by the Debtor. Debtor has a medical practice, but no one actually knows the profits he earns, for he states "all profits go to the payment of rent." Debtor lists assets of over $722,000.00, virtually all of which is claimed as exempt.

2. There is no question that, prior to filing for bankruptcy, a debtor may convert his non-exempt property into exempt property. The leading treatise on bankruptcy has stated that "under Section 522, the debtor may convert non-exempt property into exempt property immediately before the commencement of the case under Title 11. An eleventh hour acquisition of exempt property will not require disallowance of an exemption in such property." 3 *Collier on Bankruptcy*, 522.08[4] (1986 ed.)

3. However, to find nearly all of Debtor's property held as exempt property through a method of holding property as "tenants by entirety" does not end the Court's inquiry to determine whether the Debtor has filed his petition in good faith, whether he requires the protection of the Bankruptcy Court. In other words, the issue is: will granting a discharge of Debtor in this particular case be an abuse of the Bankruptcy Code.

4. Good faith is an implicit jurisdictional requirement. *See e.g. In re Khan,* 35 B.R. 718 (Bankr.W.D.Ky.1984); *In re Bingham,* 68 B.R. 933 (Bankr.M.D.Pa. 1987). As the Supreme Court stated in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979):

> By seeking discharge, however, the respondent placed the rectitute of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor."

5. The primary purpose of the bankruptcy law is to give the debtor a "fresh start", free from creditor harassment and excessive debt. As stated in *Local Loan v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934):

284

One of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." This purpose of the act has been again and again emphasized by the courts as being a public as well as private interest, in that it gives to the *honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy*, a new opportunity in life and a clear field for future effort. (Emphasis added.)

6. As the courts have often repeated, the bankruptcy law is to provide relief "to the poor but honest debtor who has tried his best to pay his creditors but failed." *See In re White*, 63 B.R. 742, 744 (Bankr. N.D.Ill.1986), *In re Khan*, 35 B.R. 718, 719 (Bankr.W.D.Ky.1984).

7. Congress never intended that bankruptcy be a refuge for the unscrupulous and cunning individual.

The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image ("honest but unfortunate debtor") and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has overutilized the privilege. *Riesenfeld, Creditors' Remedies and Debtors' Protection* 729 (3d ed. 1979).

8. And, as stated in *In re Setzer*, 47 B.R. 340 (Bawler E.D.N.Y.1985),

Good faith is not defined by the Bankruptcy Code, but has been repeatedly held to require a showing of an honest intention. *See Johnson v. Vanguard Holding Corp.*, 708 F.2d 865, 868 (2d Cir.1983) (*In re Johnson*). Its broad application to various factual situations requires inquiries into any abuses of the provisions, purpose or spirit of the bankruptcy law and into whether the debtor honestly requires the liberal protection of the Code. *See In re Vlahakis*, 11 B.R. 751, 753 (Bankr.M.D.Ga.1981). Courts have held many factors to be material to

the broad principle of good faith, and have recognized that the determination can only be made on an ad hoc basis. *See, e.g. In re Chase*, 28 B.R. 814, 817–18, 10 B.C.D. 488, 490–91 (Bankr.D.Md. 1983).

9. Good faith or the lack thereof must be determined on a case by case basis. *In re Bingham*, 68 B.R. 933, 935 (Bankr.M.D. Pa.1987); *In re Zahniser*, 58 B.R. 530 (Bankr.D.Col.1986).

10. In the instant case, the facts do not show that Debtor is a poor, unfortunate debtor in need of a "fresh start". The facts do not show that Debtor has tried his best, but failed, to pay his debts to Bronson, who is now totally blind. To the contrary, the facts show that Debtor has made every effort to avoid paying even a penny to his unfortunate victim.

11. Debtor is a capable doctor, a specialist, able to earn substantial income. And by readjusting his life-style, he should be able to pay at least a portion of his debt to Bronson. Instead, he chooses to remain the same individual, living an affluent lifestyle and determined not to pay his principal creditor.

■ 12. 11 U.S.C. § 707(a)

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause. . . .

The examples provided under 11 U.S.C. § 707(a) as justifying dismissal are only illustrative and not exhaustive. *See e.g. In re Carroll*, 24 B.R. 83 (Bankr.N.D.Oh. 1982).

■ 13. In the instant case, the Court finds a lack of *good faith in the filing of* this petition. Debtor, since the entry of the judgment against him, has transferred all of the profits of his lucrative medical practice to himself and his wife as tenants by the entireties under the guise of rent. Debtor, since the entry of the judgment against him, has also maintained no bank accounts, instead conducting his financial affairs, including his medical practice, on an all cash basis in an attempt to place his assets out of reach of the creditor's hand.

14. Debtor admits that the reason for conducting his medical practice on an all cash basis is to prevent his creditors from utilizing lawful means to collect the indebtedness lawfully owed.

15. The Debtor through his negligence, as found by the State Court jury, caused Bronson to lose the sight of his right eye. And, Bronson is now totally blind. The Debtor is able to, but chooses not to pay his debt to Bronson. Instead, he requests this Court to discharge his debt to Bronson and to shield him from any further effort by Bronson to collect his debts. This, the Court declines to do so.

16. This Court is a Court of equity and a person seeking relief under the Code must come in with clean hands, with an honorable purpose. This means that the doctor must be willing to use all of his resources to, at least, try to pay his creditors. Where an individual seeks to discharge his debts by shielding his wealth, the Court finds that such an individual is not seeking a "fresh start", but is requesting the Court to permit him to continue living "like a king". The Court finds that the Debtor does not need the protection of the Bankruptcy Court.

17. Under the circumstances of this case, to grant Debtor the relief he requests will be an abuse of the Bankruptcy Code. The Court finds that Debtor has filed his petition not in good faith. Thus, the petition is hereby dismissed.

18. Having ruled that this case is to be dismissed, the Court does not find it necessary to rule on the objection to exemptions.

A Judgment of Dismissal will be issued forthwith.