**In re Phil S. JONES, Debtor.**

**Richard P. McLAUGHLIN, Plaintiff,**

**v.**

**Phil S. JONES, Defendant.**

**Bankruptcy No. 489–00602.**
**Adv. No. 89–0078.**

United States Bankruptcy Court,
N.D. Ohio.

March 14, 1990.

Robert A. Ciotola, Youngstown, Ohio, for plaintiff.

James A. Denney, Youngstown, Ohio, for debtor/defendant.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This matter came on for trial on December 1, 1989, on the Complaint of Plaintiff, RICHARD McLAUGHLIN. Plaintiff contends that certain debts are non-dischargeable under 11 U.S.C. Sec. 523, and he objects to discharge in general under 11 U.S.C. Sec. 727. For the reasons stated below, and in order to preserve a complete record in this case, the business debts of Defendant, PHILIP S. JONES, are determined to be non-dischargeable, and his Chapter 7 Petition will be dismissed.

## FACTS

Debtor filed his Petition for relief on April 28, 1989. For approximately 12 years Debtor has been employed as a sales representative for an electronics firm. Debtor continues to be employed by this firm, where his annual salary is now approximately Fifty Thousand Dollars ($50,000.00). In addition to this job, in 1983 Debtor formed Stageworks, Inc. In this enterprise Debtor would supply and operate a sound system for various events, usually bands or other night club acts. Debtor and his wife were the original shareholders, directors and officers of Stageworks, Inc., and Debtor operated the business during the evenings and on weekends.

Sometime in early 1988, Debtor began discussions with Plaintiff, RICHARD McLAUGHLIN, about the possible expansion of Stageworks. On March 2, 1988, a Shareholder Agreement was executed by Debtor, his wife and Plaintiff. This Agreement provides that Plaintiff would provide a personal guarantee to enable the corporation to secure approximately One Hundred Forty–Five Thousand Dollars ($145,000.00) in credit. The Agreement also provided that Debtor would continue to be the sole operator of Stageworks, although he would receive no salary from the corporation because he would continue to work full time as a salesperson for the electronics firm.

Although Plaintiff became a director of Stageworks, Inc., he was never an active participant in the business. It remained the responsibility of Debtor to operate the business, make payments on the debt obligations, and maintain insurance. Pursuant to agreement, if Debtor was unable or unwilling to continue to operate the company, Plaintiff had the right to select a new manager.

With this newly acquired credit, Stageworks was able to obtain bigger and better sound equipment. In June, 1988, it entered a lease of equipment valued at approximately One Hundred Thirty–Five Thousand Dollars ($135,000.00). With these additions, the company operated with equipment valued at over Two Hundred Thousand Dollars ($200,000.00). Clearly, the parties anticipated that the additional equipment would produce substantial future income. In the meantime, however, none of the parties expected to receive dividends from corporate profits. The short-term goal of Stageworks, Inc. was simply to manage its debt and begin to turn a profit.

Unfortunately, the sound business was not a sound investment for Plaintiff. In September, 1988, Debtor left his full-time employment in order to dedicate himself to Stageworks. Debtor had what appeared to be a promising contract with the Chippendales, a male striptease dance act, which would require him to travel with the company. Plaintiff became aware of Debtor's decision to leave his full-time employment after the fact. For several weeks, Debtor traveled along the East Coast with the Chippendales. During this period, it is unclear to what extent corporate income was used for the living expenses of Debtor and his one employee, because the company operated almost entirely on a cash basis. The Chippendales' contract was not as profitable as Debtor had hoped, and in October, 1988, he contacted a Mr. Robert Stegmiller about the transfer of the operation of the business. Without providing any notice to Plaintiff, Debtor transferred all of the corporation's equipment to Mr. Stegmiller on a vague representation that

Mr. Stegmiller would complete the Chippendales' contract and assume the obligations for the corporate debt. It appears that Mr. Stegmiller did operate the business for several months, until January, 1989, but there is no evidence he used any receipts of operation to make payments for the equipment.

Plaintiff first became aware of the financial problems of Stageworks, Inc. in December, 1988, when Debtor informed him of the possible transfer of the operation of the company to Mr. Stegmiller. At that time the transfer of all the equipment had in fact already occurred. Contrary to the Shareholder Agreement, Debtor provided Plaintiff with no opportunity to select a manager of the company. Debtor did not inform Plaintiff of the transfer of corporate assets until after the transfer had occurred, and Debtor did not notify Plaintiff of any default on the corporation's debt. Plaintiff learned the true status of the debt obligation in February, 1989, when one creditor, The New Waterford Bank, called Plaintiff and requested an interest payment, which Plaintiff made. Plaintiff then contacted another creditor and learned that the largest of the corporate obligations, the equipment lease, had been in default for several months. Plaintiff and agents of one creditor bank have discussed with Mr. Stegmiller the possibility of assigning the lease. At the time of the trial in this cause, no agreement had been reached with Mr. Stegmiller, and only a small portion of the equipment has been recovered from Mr. Stegmiller.

Debtor returned to his employment with the electronics firm after an absence of only six weeks. The schedules filed with Debtor's Petition state that in 1987 he earned Fifty–Two Thousand Dollars ($52,000.00) with this employer and in 1988 he earned Forty–Three Thousand Dollars ($43,000.00). He states that he currently has monthly take-home pay of Two Thousand Three Hundred Dollars ($2,300.00) and monthly expenses of Two Thousand Three Hundred Twenty–Five Dollars ($2,325.00). These expenses include the following:

$ 50.00 per month for home maintenance, although Debtor rents his residence.

$ 75.00 per month for electricity.

$100.00 per month for gas.

$ 50.00 per month for telephone.

$110.00 per month for life insurance.

$129.00 per month for the lease of a computer, the lease of which was to terminate a few months after the filing of the Petition.

$150.00 per month for transportation, although Debtor is provided with a company car and expense account for company transportation costs.

$350.00 per month for food.

$125.00 per month for clothing.

$100.00 per month for laundry and cleaning.

$100.00 per month for recreation and entertainment.

In addition, a Five Hundred Dollar ($500.00) per month expense scheduled as a payment to the IRS did not begin on August 1, 1989, as represented in the schedules, because Debtor is still in the process of determining his 1988 tax liability. Furthermore, Debtor did not include in his take-home pay approximately Two Hundred Dollars ($200.00) per month which is withheld from his pay to cover the extra expense of the lease of a BMW automobile, a company car specifically requested by Debtor. Debtor's employer testified that the BMW lease is in excess of the company car allowance and Debtor must pay the excess cost himself.

Finally, Debtor was in possession of a grandfather clock which has been in his family for several generations. After Debtor and his wife divorced in 1988, Debtor's wife held the clock and a motorcycle to secure payment of a property settlement which was to occur within one year after the divorce. In order to keep the clock in the Jones family, Debtor's sister, Phyllis Cuddy, loaned Debtor the remaining Five Thousand Dollars ($5,000.00) which was due on the property settlement. This amount was then paid to Debtor's ex-wife, and possession of the clock was transferred to Ms. Cuddy. As a part of this transac-

tion, a Security Agreement was executed and a Financing Statement was properly filed. Debtor's Petition was filed 91 days after the execution and filing of these documents.

## DISCUSSION

### I. DENIAL OF DISCHARGE UNDER 11 U.S.C. SEC. 727

■ Denial of discharge is logically the first issue to address, because if Debtor is denied a general discharge, the issue of dischargeability of a particular debt is moot in these proceedings. The basis of Plaintiff's objection to discharge is 11 U.S.C. Sec. 727(a)(5) which provides: "The court shall grant the debtor a discharge, unless— ... (5) the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities...." In this regard, Plaintiff refers to the transfer of the grandfather clock as a loss of assets which has not been explained satisfactorily. Debtor's testimony with regard to the clock, however, was straightforward and credible. The clock was a family heirloom which remained in Debtor's house after he separated from his wife and moved out. When it became clear that Debtor would not be able to meet his obligation to his ex-wife, his sister paid the debt for him and took the clock as collateral for the loan, so that it might stay in the family. Plaintiff asserted at trial that this antique clock is worth far more than Debtor is willing to admit. Plaintiff produced no appraisal or other evidence of the higher value. It was never asserted that Debtor in any way concealed the transfer of the clock. Plaintiff did not prove that Debtor failed to explain satisfactorily any loss of assets. Indeed, Plaintiff's arguments at trial seem to support the allegation that this transfer was in the nature of

a Sec. 547 preference rather than grounds for denial of discharge under Sec. 727.[1]

Plaintiff also alleges that Debtor should be denied a discharge under 11 U.S.C. Sec. 727(a)(4) on the grounds that Debtor made a false oath or account. This section requires that this representation be made "knowingly and fraudulently," and, as discussed below, Plaintiff has failed to prove fraud in this case.

### II. DISCHARGEABILITY UNDER SECTION 523

Plaintiff contends that Debtor's liability to him resulting from his guarantee of the business loans is non-dischargeable under two subsections of 11 U.S.C. Sec. 523. Plaintiff first points to Sec. 523(a)(2) which excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud...." Plaintiff contends that when Debtor induced Plaintiff to become obligated on debts of Stageworks, Debtor actually had no intent to stay in business. As Plaintiff acknowledges in his trial brief, proof of actual fraud under Sec. 523(a)(2)(A) requires proof that Debtor made a material representation with the intent to deceive the creditor. *Sears Roebuck & Co. v. Mills (In re Mills)*, 73 B.R. 168, 170 (Bankr.D.Colo.1986); *see also,* 3 *Collier on Bankr.* Sec. 523.08[5] (15th ed.1989). In addition, Plaintiff must prove Debtor's intention by clear and convincing evidence. *See,* 3 *Collier on Bankr.* Sec. 523.08[5] (15th ed.1989).

■ In the present case, Plaintiff has failed to prove that Debtor intended to deceive him. Plaintiff asserts that Debtor violated virtually every paragraph of the Shareholder Agreement executed with Plaintiff. It is suggested that this lack of compliance demonstrates that Debtor never

---

**1.** Debtor filed his Petition for relief 91 days after the transfers which resulted in his sister gaining possession of the grandfather clock. The 90–day preference period would not apply to a transfer to Debtor's sister, however, because the transfer period with respect to "insiders" is one year. 11 U.S.C. Secs. 101(30)(A)(i) and 547(b)(4)(B). In any event, the transfer to Debt-

or's sister would not be a preference because no antecedent debt was owed by Debtor to his sister. 11 U.S.C. Sec. 547(b)(2). The Five Thousand Dollar ($5,000.00) transfer to Debtor's ex-wife might constitute a preference, depending on whether she is an insider. 11 U.S.C. Secs. 101(30)(A)(i) and 101(39).

intended to fulfill his obligations under the Shareholder Agreement. Plaintiff offered no other proof of Debtor's intentions, however, and Debtor gave credible testimony in which he stated that he had every intention to live up to the Shareholder Agreement and make Stageworks a success. The growth and ultimate success of Stageworks was a goal of Debtor and an endeavor into which he invested much of his personal time and money. Although Debtor failed to comply with almost every provision of the Shareholder Agreement, this noncompliance appears to be the result of unintentional incompetence rather than intentional deceit.

It has not been proven that Debtor committed actual or active fraud, but passive fraud is another consideration. This issue is addressed by 11 U.S.C. Sec. 523(a)(4) which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity...." It is not clear what distinction is to be drawn between "actual fraud" in Sec. 523(a)(2) and "fraud" in Sec. 523(a)(4). The legislative history of Subsec. (a)(2) indicates that this section was intended to incorporate the definition of fraud contained in *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887). 3 *Collier on Bankr.* Sec. 523.08[5] (15th ed.1989); 124 CONG.REC. H11,095–96 (daily ed. Sept. 28, 1978); S17,412–13 (daily ed. Oct. 6, 1978). That case defines fraud as "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." As this was the general definition of fraud under the Bankruptcy Act, one treatise suggests that this standard is applied under Subsec. (a)(4) as well as Subsec. (a)(2).

On the other hand, it is generally accepted that where there is a fiduciary capacity, the failure to disclose a material fact constitutes fraud because the fiduciary relationship creates a duty to disclose. *See,* 37 Am.Jur.2d, *Fraud and Deceit,* Secs. 14, 15, 441. This conclusion is consistent with Ohio law, which also recognizes this duty to disclose. 50 O.Jur.3d, *Fraud and Deceit,* Sec. 78; *Miles v. McSwegin,* 58 Ohio

St.2d 97, 388 N.E.2d 1367 (1979). And despite the language of *Neal,* the Ninth Circuit Bankruptcy Appellate Panel concluded that this type of passive fraud—that is, nondisclosure where there is a duty to speak—constitutes fraud under Sec. 523(a)(2) of the Bankruptcy Code. *In re Haddad,* 21 B.R. 421 (Bankr. 9th Cir.1982). Because nondisclosure where there is a duty to speak is so widely recognized as actionable fraud, the result in *Haddad* is clearly consistent with the plain meaning of "fraud" as it is used in the statute, despite the fact that *Neal* might suggest (although it does not explicitly hold) otherwise. Therefore, although we have concluded that Debtor in this case did not commit active fraud, we consider the issue of passive fraud in connection with Sec. 523(a)(4).

■ First to be considered under this section is whether Debtor was acting in a fiduciary capacity in relation to Plaintiff. A corporate officer is a fiduciary of the corporation within the meaning of Sec. 523(a)(4). *In re Cowley,* 35 B.R. 526, 528 (Bankr.D.Kan.1983); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). It is also established Ohio law that a director assumes a fiduciary capacity with respect to the corporation. 12 O.Jur.3d, *Business Relationships,* Sec. 420. In the present case, however, Plaintiff brought this adversary proceeding in an individual capacity, as a creditor, and not in a representative capacity on behalf of the corporation.

Whether a corporate officer or director owes a fiduciary duty in general to a corporate creditor is a more difficult question. Some Ohio decisions have held that the director of a corporation is a trustee for its creditors. 12 O.Jur.3d, *Business Relationships,* Sec. 421 n. 59. Courts considering Sec. 523(a)(4) have found a fiduciary relationship only when special circumstances exist:

> although it is generally understood that a corporate officer, director or shareholder is not liable as a fiduciary under Sec. 523(a)(4) for corporate debts owed to the corporation's creditors, an exception ex-

ists when the corporation is entrusted with funds for a particular purpose and the debt owed to the creditor bears a special relationship to the funds.

*In re Manzo*, 106 B.R. 69, 72 (Bankr.E.D. Pa.1989). The court in *In re Fussell*, 15 B.R. 1016 (W.D.Va.1981), while referring to the provision regarding funds for a particular purpose made the general conclusion that "[i]t is well established that corporate officers occupy a fiduciary relationship to the corporation and its creditors." *Fussell*, 15 B.R. at 1021. The District Court in *Fussell* relied on *Pepper v. Litton, supra,* where the United States Supreme Court held that the "standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders." *Pepper*, 308 U.S. at 307, 60 S.Ct. at 245.

■ In the present case, the totality of the circumstances, including the various relationships between Debtor and Plaintiff, make a finding of fiduciary capacity inescapable. Debtor was the president, treasurer, chairman of the board of directors, a shareholder and for a while a primary employee of Stageworks, Inc. Plaintiff was not merely a creditor of the company, he was also a director and shareholder of the corporation. The only other principal in the corporation was the ex-wife of Debtor, who was in the process of surrendering her interest in the corporation as part of the settlement of her divorce from Debtor. If Debtor owed a duty to any one person, that duty was owed to Plaintiff. Their relationship is an example of the classic situation where the owner/operator of a small business enlists the help of a passive investor. In this sense Debtor was entrusted with funds for a particular purpose. It was through Plaintiff's assistance that Debtor was able to obtain equipment of substantial value. Because Plaintiff was not involved in the operation of the business, Debtor was required by the Shareholder Agreement to perform specific duties in order to protect Plaintiff's investment. Furthermore, Plaintiff had the right to replace Debtor with a manager of his own choosing if Debtor was unable to continue operation of the business. If one considered merely the corporate form, this would be an unusual power for a director to possess. However, it is indicative of the duty owed by Debtor to Plaintiff. Although the Shareholder Agreement does not purport to establish an express trust, we find that it does establish a fiduciary relationship between Debtor and Plaintiff.

Defalcation has been defined broadly under Sec. 523(a)(4). *In re Cowley, supra,* summarizes the statements of several courts and commentators as follows:

generally, defalcation is a failure to account for money or property that has been entrusted to one ... it is broader than embezzlement or misappropriation. It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom.... It is the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation. *Cowley*, 35 B.R. at 529 (citations omitted). *See also, Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F.Supp. 1053, 1071 (N.D.Cal.1988) (Plaintiff need not show that the debtor derived personal benefit from his conduct).

■ Debtor was an officer and director of the corporation and in sole possession of the corporate assets. He owed a fiduciary duty to Plaintiff to manage the business prudently and to notify Plaintiff of any change in the management of the business. Yet, when Debtor decided he no longer wished to operate the business, he turned over all the corporate assets to a man he had known for only a month, and he walked away from his corporation. He observed no semblance of business formalities in the transfer of company assets. Debtor's conduct constitutes misconduct by a corporate officer of the highest order. By giving away the corporate assets and returning to his former job, Debtor thought only of himself when he was under a duty to think first of the corporation. 12 O.Jur.3d, *Business Relationships*, Sec. 408, et seq. This conduct constitutes defalcation under 11 U.S.C. Sec. 523(a)(4).

The testimony at trial established that, subsequent to the transfer of the corporate assets, Debtor communicated with Plaintiff but did not disclose the fact of transfer. As noted above, because Debtor owed a fiduciary duty to Plaintiff, his nondisclosure was fraudulent as to Plaintiff. *Haddad*, 21 B.R. at 423.

## III. THE ISSUE OF GOOD FAITH

■ Plaintiff asserts in his Complaint that Debtor's case should be dismissed or a discharge denied because of Debtor's lack of good faith. Plaintiff points to the fact that Debtor has made virtually no attempt to repay his business debts despite his substantial and regular income. Plaintiff also contends that Debtor has listed inflated expenses in order to disguise his financial well being.

Debtor has made no apparent attempt to repay his creditors. Indeed, Debtor made virtually no effort to recover the corporate property which he transferred to a third party. Debtor's scheduled list of expenses evidences an expansive life style. It includes several questionable items, such as a lease which was soon to expire, tax payments which never began, and inflated amounts for transportation and entertainment. The explanation offered by Debtor with respect to these figures was terse and not credible. In conclusion we find that Debtor made no attempt to fulfill the obligations which he created. While seeking the protection of the Bankruptcy Code, Debtor has attempted to conceal from his creditors and this Court his actual ability to repay his obligations. We find a lack of good faith in the filing of Debtor's Petition. The question remaining is what should be the Court's response.

11 U.S.C. Sec. 707 provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

As the language of Sec. 707(a) would indicate, the examples listed in that section are "illustrative and not exhaustive". *In re Brown*, 88 B.R. 280, 284 (Bankr.D.Haw. 1988); *see also In re Carroll*, 24 B.R. 83 (Bankr.N.D.Ohio 1982).

Debtor does not fit within the provisions of Sec. 707(b) as his debts are not primarily consumer debts. It is significant, however, that there has been discussion as to whether a debtor's ability to repay his debts may be considered as an element of substantial abuse under Sec. 707(b). It is now well established that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *see also In re Walton*, 866 F.2d 981 (8th Cir.1989); *In re Kelly*, 841 F.2d 908 (9th Cir.1988). Indeed, the 1984 consumer credit amendments which added paragraph (b) to Sec. 707 were "passed in response to an increasing number of chapter 7 bankruptcies filed each year by non-needy debtors." *Krohn*, 886 F.2d at 126; *Walton*, 866 F.2d at 983; *Kelly*, 841 F.2d at 914.

In the present case, the issue is whether Debtor's good faith, including his ability to repay his debts, may be considered as cause for dismissal pursuant to Sec. 707(a). In the case of *In re Latimer*, 82 B.R. 354 (Bankr.E.D.Pa.1988), the Bankruptcy Court

for the Eastern District of Pennsylvania determined that cause under Sec. 707(a) "does not include a consideration of whether the debtor has 'substantially abused' the provisions of chapter 7 or has proceeded in 'bad faith.' " *Latimer,* 82 B.R. at 356. In reaching this conclusion, the Court cited the legislative history of Sec. 707 prior to the addition of subsection (b) which stated:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13, in lieu of the remedy of bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880, 6336.

The policy expressed by these reports is certainly understandable. The bankruptcy court should not substitute its judgment for that of Debtor and push Debtor into a mandatory Chapter 13 Plan. On the other hand, the notion that the bankruptcy court may never examine Debtor's ability to repay his debts as an element of cause for dismissal or substantial abuse undermines the essential purpose of Sec. 707. As noted above, subsection (b) was added to Sec. 707 to curb the use of Chapter 7 by non-needy debtors, and it specifically places the burden of finding substantial abuse on the bankruptcy court. As the Senate Report on the original version of subsection (b) indicates, "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 65, 98th Cong., 1st Sess. 43 (1983). Furthermore, subsection (b) has not replaced dismissal "for cause" under subsection (a). Rather, subsection (b) "introduces an additional restraint upon a debtor's ability to attain Chapter 7 relief." *Krohn,* 886 F.2d at 126.

There is a question whether "good faith" is required under Chapter 7 and, therefore, whether lack of good faith is adequate cause for dismissal. The only provisions of the Bankruptcy Code which explicitly require good faith are those dealing with the proposal and acceptance of a plan under either Chapter 11 or Chapter 13. 11 U.S.C. Secs. 1126(e) and 1325(a)(3). Perhaps as a result of Sec. 1126(e) or former Sec. 74 of the Bankruptcy Act (which required good faith in the filing of the Petition), it is established that good faith is required in the filing of a Chapter 11 Petition as well as in the proposal of a Chapter 11 Plan. *In re Victory Construction Company, Inc.,* 9 B.R. 549 (Bankr.C.D.Cal.1981); *In re Albany Partners Limited,* 749 F.2d 670 (11th Cir.1984); *In re Thirtieth Place, Inc.,* 30 B.R. 503 (Bankr. 9th Cir.1983); *see also* 2 *Collier on Bankr.* Sec. 301.05 (15th ed. 1989); *see, Cohn, Good Faith and the Single–Asset Debtor,* 62 Am.Bankr.L.J., 131, 132 (1988) (explaining the genesis of the good-faith requirement).

While relying on this case law requiring good faith in a Chapter 11 filing, many courts have applied the same requirement to cases under Chapter 7, while others simply state that good faith is an implied requirement in the filing of any bankruptcy petition. *In re 2218 Bluebird Ltd. Partnership,* 41 B.R. 540 (Bankr.S.D.Cal.1984); *Matter of Levinsky,* 23 B.R. 210 (Bankr.E. D.N.Y.1982); *Matter of 299 Jack–Hemp Associates,* 20 B.R. 412 (Bankr.S.D.N.Y. 1982); *In re Kerzman,* 63 B.R. 393 (Bankr. D.N.D.1986); *In re Asbridge,* 61 B.R. 97 (Bankr.D.N.D.1986); *In re Sacramento Metro. Real Estate Investors,* 28 B.R. 228 (Bankr.E.D.Cal.1983) (converted Chapter 7 case dismissed where original Chapter 11 not filed in good faith); *In re Markizer,* 66 B.R. 1014 (Bankr.S.D.Fla.1986) (although good faith requirement usually arises in Chapter 11 cases, court applied standard to Chapter 7 case). Finally, several courts beginning with *In re Khan,* 35 B.R. 718 (Bankr.W.D.Ky.1984), have held that good faith is an implicit jurisdictional requirement in Chapter 7. *Brown, supra,* 88 B.R. at 283; *In re Bingham,* 68 B.R. 933 (Bankr.M.D.Pa.1987). Although the Court in *Latimer* dismissed *Khan* as having been "reversed and remanded," the Court of Appeals for the Sixth Circuit did not reverse the lower Court's findings in *Khan* but merely remanded the case for clarification.

*Latimer*, 82 B.R. at 361; *In re Khan*, 751 F.2d 162 (6th Cir.1984).

Although the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief:

> one of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." This purpose of the act has been again and again emphasized by the courts as being a public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of the bankruptcy, a new opportunity in life and a clear field for future effort. *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start. *Lines v. Fredrick*, 400 U.S. 18, 21, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). *See also* 130 CONG.REC. S8891 (daily ed. June 29, 1984) (statement of Sen. Hatch); Jackson, *The Fresh Start Policy in Bankruptcy Law*, 98 Harv.L. Rev. 1393 (1985). Therefore, the good-faith requirement is appropriately imposed by the bankruptcy court. As the Supreme Court stated in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979):

> By seeking discharge ... [the debtor places] the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the 'honest but unfortunate debtor.'

The good-faith requirement also comports with the bankruptcy court's role as a court of equity, where those seeking relief must approach the court with clean hands and an honorable purpose. *Brown*, 88 B.R. at 284. "Bankruptcy matters are ... inherently proceedings in equity ... and must foster equitable results." *Matter of Rose*, 21 B.R. 272, 276 (Bankr.D.N.J.1982), *citing, Katchen v. Landy*, 382 U.S. 323, 336–337, 86 S.Ct. 467, 476–477, 15 L.Ed.2d 391 (1966). It has also been suggested that the bankruptcy court may dismiss a petition for lack of good faith under its inherent authority to control its own docket:

> [C]ause exists to dismiss this petition in that it lacks the good faith which should inhere in the invocation of every court's jurisdiction. Power must exist 'in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.' *Landis v. North American Company*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *299 Jack–Hemp Associates*, 20 B.R. at 413.

Clearly, the issue of good faith must be determined on a case-by-case basis. *Brown*, 88 B.R. at 284; *Bingham*, 68 B.R. at 935. In the present case, Debtor's own misconduct and fraud while acting as an officer and director of Stageworks, Inc. created the debt which he now seeks to discharge. Debtor made virtually no attempt to recover the collateral for the benefit of the corporation and his co-Debtor. He attempted to conceal his income from his creditors by claiming inflated expenses and adopting a lifestyle which he wishes Plaintiff and other creditors to, in effect, finance. Under these circumstances, we find a lack of good faith which constitutes adequate cause for dismissal under 11 U.S.C. Sec. 707(a).

Debtor's Petition will be dismissed. An appropriate Order shall issue.

IT IS SO ORDERED.