**In re Buford F. HOUCK and Betty J. Houck, Debtors.**

**Bankruptcy No. 94–13233.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Feb. 22, 1995.

Ronald L. Bradley, Cincinnati, OH, for debtors.

James D. Hill, Cincinnati, OH, for I.R.S.

Richard D. Nelson, Trustee, Cincinnati, OH.

## DECISION ON IRS MOTION
## TO DISMISS

BURTON PERLMAN, Bankruptcy Judge.

Debtor filed this Chapter 7 case September 2, 1994, at 11:23 a.m. The United States, on behalf of its agency, the Internal Revenue Service ("IRS"), has filed a motion to dismiss the case for cause pursuant to 11 U.S.C. § 707(a), the cause asserted being bad faith filing or, in the alternative, to prevent an abuse of this Court's process. Debtor filed a memorandum in opposition to the motion. (The memorandum is largely devoted to a discussion of § 707(b) which deals with dismissal for substantial abuse. The discussion therefore is substantially not in point.) The motion came on for an evidentiary hearing at the conclusion of which we reserved decision.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(A).

Debtor operates an insurance agency, the Ben Houck Agency. At the hearing, the IRS offered evidence to support its position that the debtor was misusing bankruptcy laws to escape the payment of income tax. The IRS called as a witness, agent George Beck, a revenue officer of the IRS having responsibility for pursuing delinquent taxes. Beck has had the IRS files for this debtor since July, 1993. The files showed that 1985 was the last year in which debtor filed an income tax return. This is so despite the fact that since that time debtor has earned substantial income through the conduct of his insurance agency. Debtor told Beck that the filing of tax returns was voluntary as explanation for why he had not filed any tax returns since 1985. The IRS placed in evidence a document entitled Affidavit of Revocation and Rescission dated June 9, 1986, and signed by the debtor. The Affidavit is five pages long on legal paper, single spaced. The burden of the document is that it is the position of the debtor that he is not a taxpayer and he is not liable for Internal Revenue tax. The IRS also presented evidence showing that debtor had transferred all of his personal assets to a trust by documents executed December 11, 1984. His wife joined in the conveyance. By an assignment dated September 4, 1993, debtor assigned the commissions due him from Jackson National Life Insurance Company to an entity named Liberty Trust. He likewise on October 13, 1993, filed a financing statement memorializing a transfer of 12,000 shares of capital stock in National Fruit and Vegetable Technology Corporation from debtor to Liberty Trust. There were then placed in evidence records of the IRS showing tax liabilities asserted by IRS against the debtor.

The debtor testified at the hearing. By detailed reference to an IRS Manual, debtor asserted that he owed no tax for years subsequent to 1985. By resort to the Freedom of Information Act, debtor had procured documentation from the IRS regarding his history with IRS. In his testimony, debtor displayed intimate and detailed knowledge of manuals and procedures of the IRS. It was his position that a manual required that the sending of a deficiency notice appear on a document known as the IMF, but this was not shown on the IMF, so that IRS according to debtor was in error in its assertion that debtor had been notified of his tax liabilities. Debtor testified that the reason he had filed the present bankruptcy case was because IRS was harassing him for his 1985 tax.

Debtor testified that he maintains no bank account for the agency nor any personal bank account. He has not done so for some ten years (which would place the beginning of that practice at about the time he last filed an income tax return). Day-to-day bills are paid by his wife from her checking account, while he makes payments by money order. His wife, however, by his testimony, has not worked outside the home for many years. Debtor was asked about the debt listed in his schedules to Liberty Trust. He explained that his sister wanted him to set up a trust and gave him $41,000.00 in cash. Instead of putting the money into a trust, debtor gave it to his wife. He believes that he owes the Liberty Trust $41,000.00 as listed in his bankruptcy schedules because he is using the

money his sister gave him. He testified, however, that his sister had signed no trust agreement. Debtor testified that he does not keep records and does not need to keep any records because the District Director of the IRS had not advised him that he had to.

Debtor paid his attorney $2,500.00 in cash which he said he obtained from his wife for the filing of the bankruptcy case. The court takes judicial notice that the usual charge for filing a bankruptcy case in this district, certainly for one as simple as that presented here, is less than $1,000.00.

In addition to the foregoing facts elicited at the hearing, the court takes judicial notice of its own records and has done so as to the petition and schedules filed by debtor in this case. The only creditors listed in the schedules are tax creditors, federal and state, so far as Schedule E depicting creditors holding unsecured priority claims is concerned. The only other creditor listed is in Schedule F and that is Liberty Trust to which we have made reference above.

The court also takes judicial notice of prior bankruptcy cases filed by this debtor. He filed a Chapter 7 bankruptcy case on May 2, 1988, after IRS had levied against his insurance commissions. Reference therein was made to a prior bankruptcy in 1961–62 in which a discharge was granted. Almost all of the debt listed in the 1988 case was tax debt. In that case, he listed income of $77,-000.00 for 1986 and $65,000.00 for 1987. This is inconsistent with his testimony in the present case that he had no income for those years. Debtor obtained a discharge in that case after he entered into an agreed order with IRS. On February 8, 1991, debtor filed a Chapter 13 case. All of the debt listed in that case was for tax debt. That case was dismissed on the motion of IRS for exceeding the permissible limits for a Chapter 13 case as stated in § 109 of the Bankruptcy Code. The foregoing constitutes our findings of fact.

■ *In re Zick*, 931 F.2d 1124 (6th Cir. 1991) leaves no doubt that a bankruptcy case can be dismissed for cause pursuant to 11 U.S.C. § 707(a), where the court finds the filing to have been in bad faith. Further, *Zick* teaches that dismissal "based on lack of good faith must be undertaken on an ad hoc basis." *Id.* at 1129. The record before us shows unequivocally that a driving force in the life of this debtor is to escape the payment of taxes. He has resorted to the bankruptcy laws of the United States only in furtherance of that purpose. We hold this to be a misuse of bankruptcy law, and to be inconsistent with the requirement of good faith in the filing of a bankruptcy case.

In the space of seven years, this debtor has filed three bankruptcy cases. In each of those cases, virtually the only debts listed are tax debts. Beyond these salient facts, additional facts indicate bad faith, indeed, a lack of honesty by debtor in conducting his affairs. The debtor's testimony that he does not keep books in the operation of his insurance agency because the District Director of the IRS did not tell him to, is disingenuous at best. Persons engaged in business do not keep books because the District Director tells them to. They do so because that is how honest, competent business people conduct their affairs. This court has difficulty giving credibility to the conduct and statements of this debtor in view of that testimony. Further, this court does not find credible the account by debtor of how he came to have $41,000.00 in cash which he gave to his wife. This was the money he said that his sister gave him to set up a trust. That he treated the money as his own is clear from the fact that he resorted to it to pay his attorney in this case. We conclude as well that it is fair to infer from debtor's testimony in court that his election to conduct his affairs on a cash basis does not have an honest motivation, but rather has for its purpose an attempt to conceal from tax authorities any information about his affairs.

■ It is evidently debtor's belief in filing this bankruptcy case that because 11 U.S.C. § 523(a)(1) allows the discharge of certain tax debts, he has an absolute right to have the benefit of that statutory provision. In that he is mistaken. A debtor "has no constitutional or 'fundamental' right to a discharge in bankruptcy." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112

L.Ed.2d 755 (1991). The U.S. Supreme Court at the same place observed:

... This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.*

The conduct and circumstances of the debtor in the case before us are far from that of the "honest but unfortunate debtor" for whom the benefit of the bankruptcy laws of the United States was intended.

Further, that a bankruptcy case is directed at a single creditor was a powerful factor in finding bad faith in *Zick,* in *In re Hammonds,* 139 B.R. 535 (Bankr.D.Colo.1992), and in *In re Brown,* 88 B.R. 280 (Bankr. D.Haw.1988). In the present case, it is tax authorities, federal and state, who amount to that single creditor. The *Brown* case had another similarity to that before us, in that there the debtor also had conducted his affairs on a cash basis.

The foregoing discussion impels us to the conclusions that the filing of a bankruptcy case in bad faith provides grounds for dismissal, and that the present is such a case. It will therefore be dismissed.

We cannot conclude this decision without making reference to the history of the conduct of the IRS in its dealings with the affairs of this debtor. It is difficult to understand why, though the activities of this debtor have been known to the IRS for some ten years, it has taken no action to enforce the tax laws against him. Indeed, inaction of the IRS makes it virtually an accessory to the efforts of this debtor to escape the payment of taxes. We reach the conclusions that we do here in spite of, not because of, the efforts of the IRS.