**In re ABQ–MCB JOINT VENTURE, a New Mexico general partnership, Tax ID No. 85–0370122, Debtor.**

**No. 7–92–13697 MA.**

United States Bankruptcy Court, D. New Mexico.

April 12, 1993.

Robert D. Taichert, Albuquerque, NM, Donald R. Rector, Dallas, TX, for MCB Financial Group, Inc.

Victoria A. Holt, Albuquerque, NM, Antony S. Burt, Hopkins & Sutter, Chicago, IL, for ABQ Development Corp.

## *MEMORANDUM OPINION*

MARK B. McFEELEY, Chief Judge.

This matter came before the Court on the motion of ABQ Development Corporation ("ABQD") to dismiss the involuntary Chapter 7 petition filed against it by MCB Financial Group ("MCB"). Having considered the pleadings, the argument of counsel, the applicable law, and otherwise being fully informed and advised, the Court finds the motion to be will taken and will therefore be granted.

## FACTS

Prior to the hearing on the Motion to Dismiss, the parties to this action entered into a joint stipulation of facts. That stipulation is set out below. (Citations and exhibits omitted).

1. ABQD, a New Mexico Corporation, and MCB, a Delaware corporation, both having their principal place of business in Albuquerque, New Mexico are general partners of ABQ–MCB Joint Venture, a New Mexico general partnership, formed pursuant to that certain Joint Venture Agreement dated as of September 30, 1988 (the "Joint Venture Agreement"). Pursuant to the Joint Venture Agreement, ABQD and MCB formed ABQ–MCB to, *inter alia,* develop and market a 464.21–acre tract of land in Los Angeles County, California, commonly known as Bouquet Canyon (the "Property").

2. The Property constitutes substantially all of the assets of ABQ–MCB. As part of the same transaction, ABQD, which had been the sole owner of the Property, sold an undivided 75 percent interest in the Property to MCB for $13,125,000. ABQD retained the remaining 25 percent interest. In conjunction with this purchase, MCB executed and delivered to ABQD a promis-

sory note in the original principal amount of $10,500,00 ("MCB Note"). The MCB Note is secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing on the Property (the "Deed of Trust") dated September 30, 1988, recorded October 7, 1988. MCB and ABQD then contributed their respective 75 percent and 25 percent interests in the Property to ABQ–MCB. The beneficial interest under the Deed of Trust was assigned to ABQ Bank, a Federal Savings Bank (Old ABQ Bank") by assignment dated September 30, 1988 and recorded October 7, 1988.

3. ABQD is the managing general partner, co-venturer and creditor of ABQ–MCB. ABQD is a wholly owned subsidiary of the Old ABQ Bank. The Resolution Trust Corporation (the "RTC") was appointed as Conservator for Old ABQ Bank on February 8, 1990. The RTC is currently acting as Receiver for ABQ Federal Savings Bank (New ABQ Bank").

4. ABQD, MCB, ABQ–MCB and RTC, as Conservator for New ABQ Bank, entered into a Settlement Agreement dated December 14, 1990 (the "Settlement Agreement").

5. On June 27, 1991, Donald R. Rector, counsel to MCB, forwarded a draft complaint to Robert Muelenweg, counsel to RTC as Receiver for New ABQ Bank. The complaint was prepared to be filed in the Second Judicial District Court, County of Bernalillo, State of New Mexico.

6. On May 18, 1992, RTC as Receiver for New ABQ Bank filed a notice of default in the land records of Los Angeles County, California. MCB did not answer or cure the default within the 90–day statutory period. Thereafter, RTC as Receiver for New ABQ Bank filed a notice of sale pursuant to the Power of Sale contained in the Deed of Trust securing the note. The sale of the Property was scheduled for October 23, 1992.

7. On October 20, 1992, MCB filed an involuntary Chapter 7 petition (the "Petition") against ABQ–MCB. On November 20, 1992, ABQD filed its Motion to Dismiss the Petition (the "Motion To Dismiss") pursuant to Section 305(a)(1) and Section 707 of the Bankruptcy Code.

8. A title report was prepared by Chicago Title Insurance Company on or about May 18, 1992 for the Property, a true and correct copy of which is attached hereto and made a part hereof as Exhibit G.[1]

9. In the year preceding the filing of the involuntary petition herein, ABQ–MCB has made the payments identified on Schedule 1 attached hereto.[2]

10. ABQ–MCB is indebted to ABQD in the approximate amount of $2,413,486.06 which is unsecured, and to MCB in the approximate amount of $453,246.79 which is also unsecured.

At the hearing on the Motion To Dismiss, the parties entered into the following additional stipulations.

1. For purposes of the Motion To dismiss, the Court may assume that MCB has a valid subrogation claim against the RTC as Receiver for ABQ Bank.

2. For purposes of the Motion To Dismiss, the Court may assume that ABQ–MCB Joint Venture has three secured creditors; the City of Los Angeles, for unpaid property taxes; Bud Holt, an adjacent land owner who has a contingent claim; and the RTC.

3. ABQD and MCB are the only unsecured creditors.

4. There are no other known creditors of the involuntary debtor.

5. The debts due and owing on the date of the involuntary petition have not been paid.

## DISCUSSION

ABQD has presented two theories under which it asserts this proceeding should be dismissed. First, under 11 U.S.C.

---

**1.** The title report shows substantial unpaid property taxes dating from fiscal year 1989–1990.

**2.** Schedule 1 shows four payments made between October 1, 1991 and January 31, 1993 totaling $78.15.

§ 305(a)(1), the best interest of creditors and the debtor would be better served by dismissal or suspension. Second, under 11 U.S.C. § 707 cause exists to dismiss this proceeding. Each will be addressed in turn.

■ Under 11 U.S.C. § 305(a)(1), this Court has authority to dismiss or suspend all proceedings in this Chapter 7 case if the interests of creditors and the debtor would be better served by such dismissal or suspension. MCB, citing *In re Colonial Ford, Inc.* 24 B.R. 1014, 1020 (Bankr.D.Utah 1982), has asserted that the factors this Court should consider in deciding whether to abstain or dismiss under section 305 are fairness, priorities in distribution, capacity for dealing with frauds and preferences, speed, economy, freedom from litigation, and the importance of a discharge to the debtor. ABQD, citing *In re Beacon Reef Limited Partnership*, 43 B.R. 644 (Bankr. S.D.Fla.1984) and *In re Deacon Plastics Mach. Inc.*, 49 B.R. 982 (Bankr.D.Mass. 1985), has asserted that the Court must also consider the access of the parties to a pending state foreclosure forum, the small number of remaining creditors, the necessary complexity of the bankruptcy process, efficiency, and economy of administration.

■ This Court agrees that it must consider each of the factors suggested by ABQD and MCB. The Court finds these factors mandate dismissal of this proceeding. It appears to this Court that MCB is using the bankruptcy process solely for the purpose of moving state court litigation to this forum. No showing has been made that any preferences exist that may only be dealt with in this forum. No showing has been made that a discharge is important to the debtor. No showing has been made that speed or economy mandate the use of this forum over state court.

Other courts have held that dismissal pursuant to Section 305(a)(1) is appropriate when the petitioning party is seeking to use the bankruptcy court as an alternative approach to state court procedures to resolve intra-company management and stockholder disputes. *See Matter of Win–Sum Sports, Inc.*, 14 B.R. 389 (Bankr.

D.Conn.1981); *In re Beacon Reef Limited Partnership*, 43 B.R. 644 (Bankr.S.D.Fla. 1984).

The *Beacon Reef* decision is particularly instructive. In that case, an involuntary petition was filed against the partnership by its sole limited partner. Two of three general partners moved for dismissal or abstention. The court determined to abstain from the case under Section 305 after considering, among other things, the access of the parties to a pending state foreclosure forum, the small number of remaining creditors, and the necessary complexity of the bankruptcy process. The court reasoned that the dispute was primarily between the petitioning limited partner and the two active general partners. The court further reasoned that the limited partner had an adequate remedy at state law to raise defenses in the pending foreclosure proceedings and as between the parties to the partnership agreement. *Beacon Reef* 43 B.R. at 646.

In the case at bar, MCB is seeking to use this bankruptcy proceeding to resolve its intra-partnership disputes with ABQD, and lender/borrower disputes with ABQD's parent ABQ Bank, now held in receivership by the RTC. All claims asserted against ABQD and the RTC by MCB are state law claims. No showing has been made by MCB that these claims can not be more effectively adjudicated by a state court. MCB argues that the subrogation claims raised by it may be more effectively adjudicated in this Court because of this court may apply 11 U.S.C. § 510 to cases before it. Section 510(a), however, states, "[a] subordination agreement is enforceable in a case under this title to the same extent that such an agreement is enforceable under applicable nonbankruptcy law." As the subrogation agreement is no more enforceable in this Court than in state court, MCB's argument that this Court can somehow better adjudicate the subrogation issue must fail.

MCB asserts that the involvement of the RTC in this matter precludes the conclusion that this is an intra-partnership dispute. MCB asserts that the RTC, through its

control of ABQD, is seeking to liquidate the joint venture's sole asset for the RTC's lone benefit via a public foreclosure sale. That the RTC is receiver for ABQ Bank does not preclude state court action by MCB. In fact, MCB has made no showing that but for the RTC's involvement, ABQD would be any more willing to seek Chapter 7 protection for the Joint Venture or to otherwise pursue claims against its parent, ABQ Bank.

■ Further, efficiency and economy of administration suggest that dismissal is appropriate. A court may properly abstain from hearing an involuntary bankruptcy case which is essentially a two-party dispute, where the creditor has adequate state law remedies, and the debtor has no significant assets for the bankruptcy court to administer. *In re Axl Industries, Inc.*, 127 B.R. 482 (S.D.Fla.1991). It is not beneficial or economical for this Court to oversee this bankruptcy estate, which has no assets other than the fully incumbered property. The administration of this estate would likely consist of adjudicating disputes among the affiliates of the debtor, all of which can be better resolved in state court.

■ Under 11 U.S.C. § 707, this Court has the authority to dismiss a Chapter 7 case for "cause." This Court's right to dismiss for "cause" is not limited to those grounds set forth in Section 707, which are illustrative and not exhaustive. *In re Brown*, 88 B.R. 280 (Bankr.D.Hawaii 1988). Dismissal for "cause" may also occur where the debtor unreasonably delays, engages in egregious misconduct, or for lack of good faith. *See In re Brown*, 88 B.R. 280 (Bankr.D.Hawaii 1988); *In re Bingham*, 68 B.R. 933 (Bankr.M.D.Pa.1987).

■ A petitioning creditor is presumed to have filed his petition in good faith. *In re CLE Corporation*, 59 B.R. 579, 583 (Bankr.N.D.Ga.1986). In *CLE Corporation* that court stated:

It is well established that good faith is presumed on the part of the party or parties filing an involuntary petition and that the burden of proving bad faith rests on the objecting party. (citations omitted). This burden is a significant one, as the objecting party must prove bad faith by at least a preponderance of the evidence. (citations omitted)

The term "bad faith" is not defined in the Bankruptcy Code. The question of whether a party acted in bad faith is essentially a question of fact to be determined by the court. *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (D.C.Colo.1984). Courts have found bad faith in filing an involuntary petition "where the petition is ill advised or motivated by spite, malice, or a desire to embarrass the debtor." *Id.* (quoting *Camelot, Inc. v. Hayden*, 30 B.R. 409, 411 (D.C.E.D.Tenn.1983)). Other courts have found bad faith in filing an involuntary petition where "the creditor's actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures." *Id.* (citing *In re Allen Rogers and Co.*, 34 B.R. 631 (Bankr. S.D.N.Y.1983); *In re SBA Factors of Miami, Inc.*, 13 B.R. 99 (Bankr.S.D.Fla.1981). At least one court attempted to adopt an objective test for bad faith by making a determination based upon what a reasonable person would have done. *In re Grecian Heights Owners Association*, 27 B.R. 172 (Bankr.D.Or.1982).

The movant has failed to show, by a preponderance of the evidence, that under any of these standards the filing was not in good faith. ABQD asserts that the standards for bad faith articulated in *Advance Press* are inapplicable to the case at bar as that case discussed bad faith in terms of the award of attorney fees. ABQD, however, has not provided authority for the proposition that the standards for bad faith expressed in *Advance Press* are not applicable in the instant case. ABQD further asserts that, even if the standards articulated by the *Advance Press* court are applicable, MCB's conduct in filing the involuntary petition was an improper use of the Bankruptcy Code as a substitute for customary collection procedures by attempting to use this Court as a substitute for state court litigation.

■ This Court finds that the standards for bad faith articulated by the *Advance*

*Press* court are applicable to the instant case. The Court further finds that ABQD has failed to show, by a preponderance of the evidence, that the involuntary petition was not filed in good faith. ABQD has failed to show that MCB in filing this involuntary petition was doing anything more than attempting to exercise its rights under the Bankruptcy Code. That this Court has found grounds for dismissal of this petition under section 305(a)(1) is not, by itself, sufficient grounds to find bad faith on the part of the petitioner.

### CONCLUSION

This Court finds that the involuntary petition filed by MCB Financial Group must be dismissed under Section 303 as this is primarily a dispute between the two partners to the joint venture agreement which can be best adjudicated in state court. The Court further finds that the petition cannot be dismissed for cause under Section 707 as ABQD has failed to show, by a preponderance of the evidence, that the involuntary petition was filed in bad faith.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052. An appropriate order shall enter.

### ORDER DISMISSING INVOLUNTARY PETITION

In accordance with the Memorandum Opinion entered herewith;

IT IS ORDERED that the above captioned involuntary petition be dismissed.