In re Dr. Manuel H. MARKS.

No. 93–5715.

United States District Court,
E.D. Pennsylvania.

Aug. 30, 1994.

Marvin Krasny, Liza B. Leidner, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for debtor Dr. Manuel H. Marks.

David N. Bressler, Janet I. Moore, Lesser & Kaplan, P.C., Blue Bell, PA, for Dr. Herman Corn, D.D.S.

Michael H. Kaliner, Jackson & Sullivan, Fairless Hills, PA, for Edward M. Mazze.

Edward M. Mazze, Trustee, pro se.

Frederick J. Baker, Trustee, Philadelphia, PA, pro se.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Before the court is the appeal of Herman Corn, DDS ("Corn") from the order of September 16, 1993 of the United States Bankruptcy Court for the Eastern District of Pennsylvania. For the reasons stated below, the order will be affirmed.

On July 13, 1992, Dr. Manuel H. Marks ("Marks") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 701–66. On December 2, 1992, Corn, in a Second Motion for Dismissal of Bankruptcy Case under 11 U.S.C. § 707(a), contended that Marks had filed his bankruptcy petition in bad faith. With the consent of the parties, the Bankruptcy Court on February 3, 1993, entered an order stating that the motion would be adjudicated without a formal evidentiary hearing and the record for the motion would consist solely of the averments and admissions in Corn's motion, the exhibits attached to the motion, Marks's reply to the motion, Marks's bankruptcy petition and schedules, and the transcript of the first meeting of creditors. The court denied Corn's motion to dismiss on September 16, 1993; Corn appealed.

The sole issue is whether the bankruptcy court erred in concluding that Marks met his burden of proving that he filed his bankruptcy petition in good faith. An order denying a motion to dismiss a bankruptcy petition is a final order, *In re Brown*, 916 F.2d 120, 123 (3d Cir.1990); this court has appellate jurisdiction under 28 U.S.C. § 158.

Prior to the bankruptcy, Corn and Marks were partners in a dental practice. Marks's debt to Corn arose out of an arbitration award of the American Arbitration Association Commercial Arbitration Tribunal. On July 30, 1991, the Commercial Arbitration Tribunal entered an award stating in relevant part:

[I]ncluding punitive damages, MARKS shall pay to CORN ...

a. The sum of $281,114.00 with interest at the legal rate commencing September 1, 1988 ...;

b. The sum of $20,000.00 for punitive damages.

. . . .

On September 13, 1991, the Tribunal issued a clarification of its award, stating in relevant part:

[I]ncluding punitive damages, MARKS shall pay to CORN ... $270,000 ... i) under their agreement (which extinguishes all of CORN'S rights in and to the Corporation) and ii) for intentional interference with an economic opportunity by MARKS against CORN, with interest at the legal rate, commencing September 1, 1988 and thereafter until the above sum is fully satisfied.

On March 9, 1991, the Court of Common Pleas of Montgomery County confirmed the award and ordered the Prothonotary to enter judgment, upon praecipe by Corn, for $270,-000 in compensatory damages; $20,000 in punitive damages; $54,000 in interest from September 1, 1988 through December 30, 1991; $1,750 in administrative fees; and $44.38 in interest for each day subsequent to December 30, 1991. On March 17, 1992, Corn filed a praecipe for judgment in the total amount of $349,167.26, and the Prothonotary subsequently entered judgment in that amount.

Marks filed for bankruptcy on July 13, 1992. His schedules listed 4 unsecured claims totaling $381,365.68; most of the total was Corn's claim for $349,167.26. His schedules also showed secured claims totaling $438,263.35; an annual gross salary of $129,-600; and monthly expenditures of $3,473.17 for mortgage, taxes, insurance, and upkeep of rental properties, $120 for entertainment, and $480 for charitable contributions. The schedules showed total assets of $523,516.84, inclusive of his interest in ERISA pension plans totalling $312,370.41.

At the First Meeting of Creditors, held on August 21, 1992, Marks stated that he filed for bankruptcy because he thought he could not afford to pay Corn's judgment.[1]

■ A bankruptcy court's findings of fact are reviewed under a clearly erroneous standard; its conclusions of law are subject to plenary review. *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 641 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992). In a mixed question of law and fact, the bankruptcy court's decision is subject to a mixed standard of review; historical or narrative facts are accepted unless clearly erroneous, but the choice of legal precepts and the application of those precepts to the historical facts are subject to plenary review. *Id.* at 641–42.

■ The decision whether to dismiss a bankruptcy petition is guided by equitable principles; therefore, the bankruptcy court's decision to grant or deny a motion to dismiss under § 707(a) should be reversed only for abuse of discretion. *In re Zick,* 931 F.2d 1124, 1126 (6th Cir.1991); *In re Atlas Supply Corp.,* 857 F.2d 1061, 1063 (5th Cir.1988); *cf. In re ABQ–MCB Joint Venture,* 153 B.R. 338, 342 (Bankr.D.N.M.1993) (bad faith is

---

**1.** The transcript of the meeting includes the following exchange between counsel for Corn and the debtor:

Q: Is that what you're talking about, you could not afford to pay Doctor Corn's judgment and were it not for Doctor Corn's judgment you would not have gone into bankruptcy? Is that your testimony?

A: I could not afford to pay Dr. Corn's judgment.

Q: Okay. And the reason you went into bankruptcy was because you felt you could not afford to pay Doctor Corn's judgment, is that correct?

A: That's correct.

Transcript of the First Meeting of Creditors at 11:00 a.m. on August 21, 1992 Before Trustee Edward M. Mazze at 57.

"essentially a question of fact"). *But cf. In re Bingham,* 68 B.R. 933, 936 (Bankr. M.D.Pa.1987) (finding of good faith filing listed as a conclusion of law).

Section 707(a) states in relevant part:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file . . . the information required by paragraph (1) of section 521. . . .

■■■ "Good faith" is an implicit prerequisite for filing a petition under Chapter 7. Section 707(a) allows a bankruptcy court to dismiss a petition "for cause." Although § 707(a) does not list bad faith as an enumerated cause, the statute's use of the term "including" means that the enumerated causes are not exhaustive; consequently, a petition filed in bad faith may be dismissed for cause under § 707(a). *See, e.g., Zick,* 931 F.2d at 1126–27; *In re Kempner,* 152 B.R. 37, 39 (D.Del.1993); *In re Hammonds,* 139 B.R. 535, 540–41 (Bankr.D.Colo.1992); *In re Jones,* 114 B.R. 917, 924–26 (Bankr. N.D.Ohio, 1990); *In re Sky Group Int'l, Inc.,* 108 B.R. 86, 90 (Bankr.W.D.Pa.1989); *In re Maide,* 103 B.R. 696, 697 (Bankr.W.D.Pa. 1989); *Bingham,* 68 B.R. at 935.

■■■ "Good faith" is not defined in the Bankruptcy Code. At the very least, good faith requires a showing of honest intention. *Hammonds,* 139 B.R. at 541; *In re Campbell,* 124 B.R. 462, 464 (Bankr.W.D.Pa.1991); *Sky Group Int'l,* 108 B.R. at 90; *Bingham,* 68 B.R. at 935. Such a determination can be made only on an *ad hoc* basis and depends on whether any abuses of the provisions, purpose, or spirit of bankruptcy law have occurred. *Hammonds,* 139 B.R. at 542; *Sky Group Int'l,* 108 B.R. at 90; *Bingham,* 68 B.R. at 935. Once the good faith issue is placed in question, the party bringing the petition has the burden of proving that the petition was brought in good faith. *Hammonds,* 139 B.R. at 541; *Sky Group Int'l,* 108 B.R. at 90.

■■■ There is no specific test for determining good or bad faith. " 'The facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases.' " *Zick,* 931 F.2d at 1127 (quoting *Bingham,* 68 B.R. at 935).[2] Nevertheless, a court should not lightly infer the presence of bad faith:

Dismissal based on lack of good faith . . . should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.

*Zick,* 931 F.2d at 1129.[3]

The bankruptcy court found that the record did not contain sufficient evidence to conclude that Marks led a lavish and excessive rather than "comfortable" lifestyle or that Marks concealed or misrepresented assets or sources of income. The bankruptcy court stated that the record did not establish any unexplained transfer of assets, multiple case filings, extraordinary procedural gymnastics, or lack of candor and completeness in the debtor's statements and schedules. These findings are not clearly erroneous.

---

**2.** The *Bingham* court found that the following factors are often present in bad faith filings: (a) frivolous purpose, absent any economic need; (b) lack of an honest and genuine desire to use the statutory process to effect a plan of reorganization; (c) use of a bankruptcy as a device to further some sinister or unworthy purpose; (d) abuse of the judicial process to delay creditors or escape the day of reckoning in another court; (e) lack of real debt, creditors, assets in an ongoing business; and (f) lack of reasonable probability of successful reorganization. *Bingham,* 68 B.R. at 935.

**3.** The good faith requirement is broader than that suggested in *In re Latimer,* 82 B.R. 354 (Bankr.E.D.Pa.1988). *See id.* at 356 (stating that "cause" in § 707(a) is limited to violations of the Bankruptcy Code or court orders and does not include substantial abuse of Chapter 7 proceedings or bad faith); *id.* at 364 (stating that any good faith requirement would include "only the narrow concepts of fraudulent misrepresentations or serious non-disclosures of material facts").

■ Most instances of dismissal for bad faith filing under § 707(a) involve concealment, misrepresentation, or unexplained transfers to place assets beyond the reach of creditors. *See, e.g., Hammonds,* 139 B.R. at 542; *In re Johnson,* 137 B.R. 22 (Bankr. E.D.Ky.1991); *Jones,* 114 B.R. at 926; *Maide,* 103 B.R. at 698–700; *In re Brown,* 88 B.R. 280, 284–85 (Bankr.D.Hawaii 1988). In the absence of such evidence, it was not an abuse of discretion for the bankruptcy court to conclude that no wrongdoing warranting dismissal had occurred in this bankruptcy action.

■ In denying the motion to dismiss the petition, the bankruptcy court concluded that a debtor's ability to repay debts does not of itself establish bad faith or cause for dismissal under § 707(a); this conclusion is not legally erroneous. *See, e.g., Hammonds,* 139 B.R. at 542–43; *In re Bridges,* 135 B.R. 36, 37–38 (Bankr.E.D.Ky.1991); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880 ("The section [§ 707(a)] does not contemplate, however, that the ability of a debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy."); H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336 (same). The bankruptcy court also concluded, and this court agrees, that the Commercial Arbitration Tribunal's finding that Marks deliberately interfered with Corn's economic opportunity and the award of punitive damages collaterally estops Marks from arguing that the debt owed to Corn was not based on intentional misconduct. *See Goldberg, Dickman & Shalita, P.C. v. Shalita,* Civ.Action No. 92–3516, 1992 WL 301521 (E.D.Pa. Oct. 13, 1992).

■ The Bankruptcy Code explicitly provides that debts arising out of certain types of intentional misconduct by a debtor are not dischargeable. *See* 11 U.S.C. § 523(a)(2)(A) (exception to discharge for money, property, or services to the extent obtained by false pretenses, false representation, or actual fraud); 11 U.S.C. § 523(a)(4) (exception to discharge for fraud or defalcation while act-ing in a fiduciary capacity); 11 U.S.C. § 523(a)(6) (exception to discharge for willful and malicious injury by the debtor to another entity or to the property of another entity). Because § 523 mandates exceptions to discharge for some debts arising out of a debtor's prior misconduct, the fact that a debtor files for bankruptcy because of a debt arising out of his own intentional misconduct does not necessarily warrant dismissal under § 707(a). The Bankruptcy Judge will address on remand the extent to which Marks's debt to Corn constitutes an exception to discharge.

■ The bankruptcy court's factual findings are not clearly erroneous; the bankruptcy court did not abuse its discretion in concluding that Marks met his burden of proving good faith filing and denying Corn's motion to dismiss. Consequently, the bankruptcy court's order will be affirmed. An appropriate order follows.