

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2000

# In Re Ronald Tamecki

Precedential or Non-Precedential:

Docket 99-4061

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"In Re Ronald Tamecki" (2000). *2000 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 27, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-4061

IN RE: RONALD M. TAMECKI, SR.,

        Debtor

RONALD M. TAMECKI, SR.,

        Appellant

v.

LAWRENCE G. FRANK

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(Dist. Court No. 99-cv-01240)
District Court Judge: James F. McClure, Jr.

Argued: May 25, 2000

Before: ALITO, RENDELL and DUHE,* Circuit Judges.

(Filed September 27, 2000)

        FRANK E. GARRIGAN (Argued)
        Garrigan & Rosini
        112 East Independence Street
        Shamokin, Pennsylvania 17872

        Attorney for Appellant
_____

* Honorable John M. Duhe Jr., United States Circuit Judge for the
United States Court of Appeals for the Fifth Circuit, sitting by
designation.

        LAWRENCE G. FRANK (Argued)
        Law Office of Lawrence G. Frank
        2023 North Second Street
        Harrisburg, Pennsylvania 17102

        Attorney for Appellee

OPINION OF THE COURT

DUHE, Circuit Judge:

We AFFIRM the decision of the district court affirming the bankruptcy court's dismissal of Ronald M. Tamecki's ("Debtor") Chapter 7 petition.

BACKGROUND

Debtor filed for Chapter 7 protection seeking discharge of an approximately $35,000 credit card debt owed to MBNA America. He possesses only one substantial asset, his share of a tenancy by the entirety in his home, which he holds with his estranged wife. Debtor and his wife have accrued over $100,000 of equity in the home.

The Tameckis had been separated for approximately five years at the time Debtor filed for bankruptcy, and they have now been separated for more than seven years. Debtor and his wife live in different towns, and each lives with a significant other. Mrs. Tamecki filed for divorce in July 1993 but, for unknown reasons, the action is still pending. The most recent trial date was continued either on joint motion of the parties or without objection by the Debtor.

In his petition Debtor claimed an exemption under Section 522(b)(2)(B) of the Bankruptcy Code on his share of the home equity. See 11 U.S.C. S 522(b)(2)(B). The trustee in bankruptcy ("Trustee") challenged this election and sought dismissal of Debtor's petition for "lack of good faith" under Section 707(a) of the Code. See 11 U.S.C. S 707(a). According to Trustee, Debtor's divorce is "right around the corner"; and, thus, Debtor will soon be entitled to his unencumbered share of the dissolved tenancy by the entirety. The Trustee estimates that this would be

approximately $50,000, an amount sufficient to cover Debtor's obligations and still leave him with enough money for a "fresh start." Accordingly, the Trustee reasoned that Debtor acted in bad faith in filing his petition knowing that he would soon be in a position to repay his debts. The bankruptcy court found that Debtor had failed to prove his good faith in filing for bankruptcy and dismissed the Debtor's petition under Section 707(a). The district court affirmed.

DISCUSSION

Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing. See In re Zick, 931 F.2d 1124, 1126-27 (6th Cir. 1991), In re Marks, 174 B.R. 37, 40 (E.D. Pa. 1994). Although the Code does not define "good faith," courts in this circuit have uniformly held that"[a]t the very least, good faith requires a showing of honest intention." See Marks, 174 B.R. at 40. Courts have cautioned, however, that:

> Dismissal based on lack of good faith . . . should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.

Zick, 931 F.2d at 1129. Courts can determine good faith only on an ad hoc basis and must decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law. See Marks, 174 B.R. at 40. The parties agree that the decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court. See Zick, 931 F.2d at 1126, In re Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir. 1988).

Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith. See Marks, 174 B.R. at 40 citing In re Sky Group Int'l, Inc., 108 B.R. 86, 90 (Bankr. W.D. Pa. 1989) ("Once the good faith issue is placed in question, the party bringing the

3

petition has the burden of proving that the petition was brought in good faith."). The bankruptcy court found that Debtor failed to meet this burden. We agree.

Debtor testified that he accrued over $35,000 in debt at a time when he was earning less than one-tenth this amount. Debtor could point to no marked calamity or sudden loss of income that precipitated his need to accrue such a comparatively large consumer debt. Moreover, Debtor's testimony concerning the state of his marriage confirmed the Trustee's assertion that divorce and dissolution of the tenancy by the entirety were "right around the corner.[1]" The district court did not abuse its discretion in determining that together these facts are sufficient to shift the burden to Debtor to prove his good faith.[2]

Debtor's response was three-fold: first, that the Trustee must prove "extreme misconduct"; second, that ability to repay is not, in and of itself, evidence of bad faith, see Marks, 174 B.R. at 41 and third; that he did no more than avail himself of a proper exception under the Code. While we agree with Debtor and the court in Zick that we should not lightly infer bad faith, Debtor's response is insufficient to carry his burden of proving good faith. Debtor proffered no evidence of good faith other than his testimony that he

_____

1. Tamecki's testimony confirms that he and his wife are estranged. They have been separated for seven years. They live in separate towns, each with a new significant other. A divorce proceeding has been pending since 1993. They have not sought counseling, nor is there any indication that either party has made overtures toward a reconciliation. No explanation for the delay in finalizing the divorce has been provided. Accordingly, we see no error in the bankruptcy court's apparent discounting of Tamecki's self-serving testimony that he would take his wife back "in a heartbeat." That may be true, but there is no evidence that her return is either imminent or likely.

2. We do not suggest, as the Dissent indicates, that "consumer debtors [must] affirmatively demonstrate good faith absent any challenge," or that "dismissal is appropriate anytime the debtor fails to affirmatively demonstrate his good faith." We hold merely that in this case where the trustee has called into question debtor's good faith, and put on evidence sufficient to impugn that good faith, the burden then shifts to the debtor to prove his good faith.

4

accrued his debt for subsistence purposes, intended to repay the debt, and that he loved his wife and would take her back "in a heartbeat." The bankruptcy court chose to discount this self-serving testimony and instead relied upon evidence that Debtor acquired a comparatively large consumer debt just prior to filing for bankruptcy and during the pendency of his divorce. While Debtor is correct that ability to repay is not in and of itself sufficient proof of bad faith, both the reasonableness of his accrual of the debt and the timing of his filing, particularly in relation to the curious and unexplained circumstances relating to the divorce proceeding, were sufficiently questionable to warrant good faith scrutiny. Debtor's assertion that the Code permits him to take the entireties exemption simply begs the question and does not address whether he availed himself of that provision in good faith. Ultimately, we find no error in the bankruptcy court's ruling that Debtor failed to prove his good faith.

AFFIRMED.

ALITO, Circuit Judge, concurring:

I join the opinion of the Court, but I add a few words to clarify the narrow point of disagreement between the majority and the dissent. As I understand the position of our dissenting colleague, she agrees (a) that a Chapter 7 consumer case may be dismissed for "bad faith" and (b) that, once a debtor's good faith is appropriately put at issue, it is the burden of the debtor to produce evidence of good faith. I do not understand the dissent to argue that in this case the debtor produced evidence of good faith, and thus the only apparent point of disagreement concerns the question whether, on the particular facts of this case, the debtor's good faith was sufficiently put at issue to require him to demonstrate good faith.

The dissent apparently believes that, in order to put Tamecki's good faith at issue, it was incumbent upon the trustee to produce evidence that, among other things, there is no good reason for the unusual delay in the completion of the Tameckis' divorce proceeding. See Dissenting Opinion at 9 ("[T]he trustee offered no evidence that put Tamecki's good faith at issue. He only made bald allegations, without proffering any evidence about the timing of Tamecki's still unconsummated divorce. . . ."). But the trustee, who is obviously not a party to the divorce proceeding, is in a comparatively poor position to show the reason for the delay. The known facts about the divorce proceeding are sufficient to place upon the debtor the burden of explaining the reason for the delay, which has now reached seven years. It may be that there are entirely legitimate reasons for the delay. If so, it should have been easy for Tamecki to show what they were. But he made no effort to do so.

Under the particular circumstances of this case-- which, contrary to the implication of the dissent, is not the average consumer bankruptcy case -- the bankruptcy judge did not commit an abuse of discretion is dismissing the petition.

6

RENDELL, Circuit Judge, dissenting:

Some background is necessary to understand the framework in which we analyze this dispute and why I strenuously disagree with the outcome in this case, the reasoning, and the rule implicitly set forth by the majority. The Bankruptcy Code contains no explicit good faithfiling requirement.1 It does, however, permit the court to dismiss cases, including chapter 7 consumer cases, "for cause." See 11 U.S.C. SS 707(a), 930(a), 1112(b), 1208(c), 1307(c). We have not previously addressed the question of whether lack of good faith is grounds for dismissal of chapter 7 consumer bankruptcy cases under section 707(a), nor have we established how to go about determining bad faith in such a context.2 Only two other courts of appeals have squarely confronted the question of bad faith dismissal of a consumer bankruptcy case under section 707(a). Both have held that bad faith may be grounds for dismissal under that provision, but have narrowly construed bad faith, finding that cases should be dismissed under only very limited circumstances in which the bankruptcy court has made specific findings of egregious behavior or misconduct. See Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832 (8th Cir. 1994); Industrial Ins. Servs., Inc. v. Zick (In re Zick), 931 F.2d 1124, 1129 (6th Cir. 1991). Both in and outside of these two circuits, bankruptcy and district courts

_____

1. The one exception is in chapter 9, which governs bankruptcies by municipalities and contains an express good faithfiling requirement. See 11 U.S.C. S 921(c). The Bankruptcy Code does require that repayment or reorganization plans -- as opposed to bankruptcy cases themselves -- be proposed in good faith. See 11 U.S.C. SS 1129(a)(3), 1225(a)(3), 1325(a)(3).

2. Although we have not ruled on the use of section 707(a) to dismiss cases "for cause" on account of bad faith, we recently have held, in the context of a sophisticated corporate debtor in chapter 11, that lack of good faith can be grounds for dismissal "for cause" under section 1112. See In re SGL Carbon Corp., 200 F.3d 154, 161 (3d Cir. 1999). We also stated in a footnote in SGL that "once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in `good faith.' " Id. at n.10. However, even if this statement were to be extended to chapter 7 consumer cases, as we discuss later, and as distinguished from the situation in SGL, nothing in the record of this case puts Tamecki's good faith "at issue."

7

have reserved bad faith dismissal for the truly egregious case, often involving individuals with substantial means who have flaunted their wealth, have continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties.3 Indeed, because the standards for finding bad faith have been set so high by the federal courts, cases involving conduct that might appear questionable are nonetheless not dismissed due to the lack of actual evidence of bad faith or misconduct. See, e.g., In re Marks, 174 B.R. 37, 40 (E.D. Pa. 1994) (explaining, in upholding the bankruptcy court's decision not to dismiss the case, that "[t]he bankruptcy court stated that the record did not establish any unexplained transfer of assets, multiple case filings, extraordinary procedural gymnastics, or lack of candor and completeness in the debtor's statements and schedules.").4 With that background, I now turn to the facts of this case.

In nearly all respects, Tamecki fits the profile of the average consumer debtor. He has marital problems, health problems, and employment problems. He has a large credit card debt that he incurred for subsistence purposes by using unsolicited "live checks" that MBNA sent to him while he was experiencing a lull in income and ability to perform

_____

3. See, e.g., In re Lacrosse , 244 B.R. 583, 588-589 (Bankr. M.D. Pa. 1999) (dismissing case of debtor with 58 credit cards and over $500,000 of consumer debt, who lived a lavish lifestyle and drove luxury cars, and who also falsely enticed clients to give him money by saying that he intended to make tax-free investments); In re Brown, 88 B.R. 280, 284-285 (Bankr. D. Hawaii 1988) (dismissing case of successful ophthalmologist who engaged in prebankruptcy asset planning to remove more than $700,000 from the reach of creditors and who sought to avoid an obligation to a recipient of cataract surgery who lost all vision in her
right eye).

4. The Court in Marks continued by explaining that "[m]ost instances of dismissal for bad faith under S 707(a) involve concealment, misrepresentation, or unexplained transfers to place assets beyond the reach of creditors." Id. at 41. Thus, even the cases of debtors that appear
not to need bankruptcy relief have not been dismissed for bad faith in the absence of evidence of misconduct. See, e.g., In re Josey, 169 B.R. 138, 140 (Bankr. S.D. Ohio 1994); In re Bridges , 135 B.R. 36, 38 (Bankr. E.D. Ky. 1991).

construction work due to his health and employment problems. He has an even lower income (under $4,000 per year in 1996 and 1997) than most debtors. He also has equity in a home held in tenancy by the entirety with his estranged wife that, under Pennsylvania law, cannot be touched by his creditors, either in or out of bankruptcy unless or until the tenancy is broken. However, far from the anecdotes of debtors who buy real estate to convert cash into exempt home equity in contemplation of bankruptcy, Tamecki and his wife have owned the house for many years; indeed, Tamecki built the house himself. Tamecki therefore has none of the obvious badges of bad faith as gleaned from the other cases.

One would expect, therefore, that this case was dismissed for bad faith because the trustee put forth evidence of some type of misconduct or fraud. However, the trustee offered no evidence that put Tamecki's good faith at issue. He only made bald allegations, without proffering any evidence, about the timing of Tamecki's still-unconsummated divorce and his accrual of debt to MBNA, to which Tamecki provided responses that were not discredited by the Bankruptcy Court. The trustee, who is the primary advocate of dismissing Tamecki's case, conceded at oral argument that even after conducting considerable research, he knows of no case with an analogous fact pattern or remotely on point; he could not name one. Having canvassed the landscape, I have not found a case bearing any resemblance to this one in which bad faith was found to exist. Simply put, our ruling breaks new ground in the law regarding good faith filing.

In dismissing Tamecki's case, the Bankruptcy Court made no specific findings of bad faith. However, in upholding the dismissal of Tamecki's case, the majority focuses on Tamecki's accrual of debt to MBNA and his pending divorce, both of which I will discuss in turn.

Tamecki accrued most of his debt to MBNA within the two years prior to filing for bankruptcy. In addressing this accrual of debt, the Bankruptcy Court made no finding that Tamecki ran up his debts in contemplation of bankruptcy or made extravagant purchases in reckless disregard of his financial situation. To the contrary, the Bankruptcy Court

9

credited Tamecki's testimony that he incurred this debt to supplement his paltry income for food and other necessities. It is difficult to contemplate what more Tamecki could have done to refute any inference of bad faith from his use of the unsolicited live checks for subsistence at a time when he had nominal income. If the existence of a large credit card debt, unaccompanied by any evidence that the debtor incurred the debt without the intent to repay,[5] is sufficient for bad faith dismissal, the bankruptcy courts and the majority of debtors in our circuit should be prepared for an onslaught of good faith challenges.

The majority ruling also relies on Tamecki's still-unconsummated divorce proceedings. Tamecki's wife filed for divorce more than five years prior to the bankruptcy filing, but the proceedings have been dormant for much of that time. Tamecki claims he would never divorce his wife of his own accord; he testified that he wants to remain married to her. The trustee opined, with no evidence, that Tamecki's divorce is "right around the corner," in which event he could be forced to sell his home, break the tenancy by the entirety protected by Pennsylvania law, and pay MBNA what he owes. I might find this contention persuasive if the trustee had offered any specific evidence, and the Bankruptcy Court had specifically found, that Tamecki had timed his bankruptcy and divorce to defraud his creditors. However, the Bankruptcy Court made no such finding, nor did it indicate that the possibility of Tamecki's divorce played any role in its ruling. In fact, the Court never shared its view on this issue; it did not explicitly accept the trustee's argument in this regard, nor did it discredit Tamecki's assertion that he did not want to be divorced from his wife (and therefore had no intention to break the tenancy by the entirety on his own accord).[6] The majority takes a quantum and unprecedented leap by

_____

5. The Bankruptcy Code contains a provision, section 523(a), under which creditors can challenge the dischargeability of specific debts. If there was any question that Tamecki incurred the debt without the intent to pay it, MBNA could have pursued its rights under that provision.

6. The majority's reference to the Bankruptcy Court's assessment of the testimony regarding the marital status as "apparent discounting of Tamecki's self-serving testimony" is curious in light of the Bankruptcy Court's lack of any reference whatsoever to any concern regarding the marital situation. As noted above, the Bankruptcy Court does not even refer to the timing of the divorce as having any bearing on its decision or the outcome.

crediting the trustee's argument and using it as a basis for upholding the dismissal of Tamecki's case.

A closer look at the trustee's argument reveals its slippery slope. Failing to put forth any evidence that Tamecki has schemed with his wife to postpone the divorce for their mutual benefit, the trustee's position on the divorce issue, as clarified in oral argument, is that Tamecki had an obligation "to move his divorce along" before filing for bankruptcy so that the state-law-protected tenancy by the entirety would be broken to make his home equity available for creditors, regardless of whether Tamecki actually wants to save his marriage.7 In addition to being concerned about the result in the case before us, I am concerned that by endorsing this argument, the majority is announcing an unprecedented rule that insolvent individuals must refrain from filing for bankruptcy if they may have more assets in the future, such that filing before realization of such assets, even absent proof of bad intent, is grounds for dismissal of one's bankruptcy case. For example, is an insolvent individual barred from filing for bankruptcy if his wealthy parent is ill, absent any evidence that he is timing his filing so as to deprive creditors of his potential inheritance? I submit that there is no such restriction in the Bankruptcy Code, and the courts should not create one.

I will refrain from refuting a variety of specific statements made by the majority, with one exception, namely, its assertion that a court may dismiss a chapter 7 case for cause if the debtor fails to demonstrate good faith in filing, citing the Zick decision. Zick does not require consumer debtors to affirmatively demonstrate good faith absent any challenge. Zick says that lack of good faith may be a valid basis for dismissing a bankruptcy case for cause under section 707(a), see Zick, 931 F.2d at 1126, not that dismissal is appropriate anytime the debtor fails to

_____

7. The trustee's alternative position at oral argument was that if Tamecki and his wife get back together, they should be required to take a second mortgage on their home to pay the MBNA debt. Regardless of the relative merits of this argument as a policy matter, it has no foundation in current bankruptcy law.

11

affirmatively demonstrate his good faith.8 Even if the burden shifts to a consumer chapter 7 debtor to defend his good faith after good faith has been put "at issue," I would submit that placing good faith at issue requires more than an unsupported hypothesis about the state of Tamecki's relationship with his estranged wife and pointing to a specific credit card debt in the bankruptcy schedules. I frankly find it untenable that an entirely unsupported assertion can trigger an obligation on the part of a debtor to affirmatively prove his good faith or lose all entitlement to bankruptcy relief. Such a procedure would be contrary to that employed by our sister courts of appeals, and constitutes an unwarranted departure from existing law.

I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

8. The Huckfeldt decision from the Court of Appeals for the Eighth Circuit also makes no mention of placing the burden of proving good faith on the debtor, taking only the cautious step that a specific finding of bad faith may be grounds for section 707(a) dismissal.

12