RENDELL, Circuit Judge,
dissenting:
Some background is necessary to understand the framework in which we analyze this dispute and why I strenuously disagree with the outcome in this case, the reasoning, and the rule implicitly set forth by the majority. The Bankruptcy Code contains no explicit good faith filing requirement.[1] It does, however, permit the *209 court to dismiss cases, including chapter 7 consumer cases, “for cause.” See 11 U.S.C. §§ 707(a), 930(a), 1112(b), 1208(c), 1307(c). We have not previously addressed the question of whether lack of good faith is grounds for dismissal of chapter 7 consumer bankruptcy cases under section 707(a), nor have we established how to go about determining bad faith in such a context.[2] Only two other courts of appeals have squarely confronted the question of bad faith dismissal of a consumer bankruptcy case under section 707(a). Both have held that bad faith may be grounds for dismissal under that provision, but have narrowly construed bad faith, finding that cases should be dismissed under only very limited circumstances in which the bankruptcy court has made specific findings of egregious behavior or misconduct. See Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832 (8th Cir.1994); Industrial Ins. Servs., Inc. v. Zick (In re Zick), 931 F.2d 1124, 1129 (6th Cir.1991). Both in and outside of these two circuits, bankruptcy and district courts have reserved bad faith dismissal for the truly egregious case, often involving individuals with substantial means who have flaunted their wealth, have continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties.[3] Indeed, because the standards for finding bad faith have been set so high by the federal courts, cases involving conduct that might appear questionable are nonetheless not dismissed due to the lack of actual evidence of bad faith or misconduct. See, e.g., In re Marks, 174 B.R. 37, 40 (E.D.Pa.1994) (explaining, in upholding the bankruptcy court’s decision not to dismiss the case, that “[t]he bankruptcy court stated that the record did not establish any unexplained transfer of assets, multiple case filings, extraordinary procedural gymnastics, or lack of candor and completeness in the debtor’s statements and schedules.”).[4] With that background, I now turn to the facts of this case.
In nearly all respects, Tameeki fits the profile of the average consumer debtor. He has marital problems, health problems, and employment problems. He has a large credit card debt that he incurred for subsistence purposes by using unsolicited “live checks” that MBNA sent to him while he was experiencing a lull in income and ability to perform construction work due to *210 his health and employment problems. He has an even lower income (under $4,000 per year in 1996 and 1997) than most debtors. He also has equity in a home held in tenancy by the entirety with his estranged wife that, under Pennsylvania law, cannot be touched by his creditors, either in or out of bankruptcy unless or until the tenancy is broken. However, far from the anecdotes of debtors who buy real estate to convert cash into exempt home equity in contemplation of bankruptcy, Tamecki and his wife have owned the house for many years; indeed, Tamecki built the house himself. Tamecki therefore has none of the obvious badges of bad faith as gleaned from the other cases.
One would expect, therefore, that this case was dismissed for bad faith because the trustee put forth evidence of some type of misconduct or fraud. However, the trustee offered no evidence that put Ta-mecki’s good faith at issue. He only made bald allegations, without proffering any evidence, about the timing of Tamecki’s still-uneonsummated divorce and his accrual of debt to MBNA, to which Tamecki provided responses that were not discredited by the Bankruptcy Court. The trustee, who is the primary advocate of dismissing Ta-mecki’s case, conceded at oral argument that even after conducting considerable research, he knows of no case with an analogous fact pattern or remotely on point; he could not name one. Having canvassed the landscape, I have not found a case bearing any resemblance to this one in which bad faith was found to exist. Simply put, our ruling breaks new ground in the law regarding good faith filing.
In dismissing Tamecki’s case, the Bankruptcy Court made no specific findings of bad faith. However, in upholding the dismissal of Tamecki’s case, the majority focuses on Tamecki’s accrual of debt to MBNA and his pending divorce, both of which I will discuss in turn.
Tamecki accrued most of his debt to MBNA within the two years prior to filing for bankruptcy. In addressing this accrual of debt, the Bankruptcy Court made no finding that Tamecki ran up his debts in contemplation of bankruptcy or made extravagant purchases in reckless disregard of his financial situation. To the contrary, the Bankruptcy Court credited Tamecki’s testimony that he incurred this debt to supplement his paltry income for food and other necessities. It is difficult to contemplate what more Tamecki could have done to refute any inference of bad faith from his use of the unsolicited live checks for subsistence at a time when he had nominal income. If the existence of a large credit card debt, unaccompanied by any evidence that the debtor incurred the debt without the intent to repay,[5] is sufficient for bad faith dismissal, the bankruptcy courts and the majority of debtors in our circuit should be prepared for an onslaught of good faith challenges.
The majority ruling also relies on Ta-mecki’s still-unconsummated divorce proceedings. Tamecki’s wife filed for divorce more than five years prior to the bankruptcy filing, but the proceedings have been dormant for much of that time. Ta-mecki claims he would never divorce his wife of his own accord; he testified that he wants to remain married to her. The trustee opined, with no evidence, that Ta-mecki’s divorce is “right around the corner,” in which event he could be forced to sell his home, break the tenancy by the entirety protected by Pennsylvania law, and pay MBNA what he owes. I might find this contention persuasive if the trustee had offered any specific evidence, and the Bankruptcy Court had specifically found, that Tamecki had timed his bankruptcy and divorce to defraud his creditors. However, the Bankruptcy Court made no such finding, nor did it indicate that the possibility of Tamecki’s divorce *211 played any role in its ruling. In fact, the Court never shared its view on this issue; it did not explicitly accept the trustee’s argument in this regard, nor did it discredit Tamecki’s assertion that he did not want to be divorced from his wife (and therefore had no intention to break the tenancy by the entirety on his own accord).[6] The majority takes a quantum and unprecedented leap by crediting the trustee’s argument and using it as a basis for upholding the dismissal of Tamecki’s case.
A closer look at the trustee’s argument reveals its slippery slope. Failing to put forth any evidence that Tamecki has schemed with his wife to postpone the divorce for their mutual benefit, the trustee’s position on the divorce issue, as clarified in oral argument, is that Tamecki had an obligation “to move his divorce along” before filing for bankruptcy so that the state-law-protected tenancy by the entirety would be broken to make his home equity available for creditors, regardless of whether Tamecki actually wants to save his marriage.[7] In addition to being concerned about the result in the ease before us, I am concerned that by endorsing this argument, the majority is announcing an unprecedented rule that insolvent individuals must refrain from filing for bankruptcy if they may have more assets in the future, such that filing before realization of such assets, even absent proof of bad intent, is grounds for dismissal of one’s bankruptcy case. For example, is an insolvent individual barred from filing for bankruptcy if his wealthy parent is ill, absent any evidence that he is timing his filing so as to deprive creditors of his potential inheritance? I submit that there is no such restriction in the Bankruptcy Code, and the courts should not create one.
I will refrain from refuting a variety of specific statements made by the majority, with one exception, namely, its assertion that a court may dismiss a chapter 7 case for cause if the debtor fails to demonstrate good faith in filing, citing the Zick decision. Zick does not require consumer debtors to affirmatively demonstrate good faith absent any challenge. Zick says that lack of good faith may be a valid basis for dismissing a bankruptcy case for cause under section 707(a), see Zick, 931 F.2d at 1126, not that dismissal is appropriate anytime the debtor fails to affirmatively demonstrate his good faith.[8] Even if the burden shifts to a consumer chapter 7 debtor to defend his good faith after good faith has been put “at issue,” I would submit that placing good faith at issue requires more than an unsupported hypothesis about the state of Tamecki’s relationship with his estranged wife and pointing to a specific credit card debt in the bankruptcy schedules. I frankly find it untenable that an entirely unsupported assertion can trigger an obligation on the part of a debtor to affirmatively prove his good faith or lose all entitlement to bankruptcy relief. Such a procedure would be contrary to that employed by our sister courts of appeals, and constitutes an unwarranted departure from existing law.
I respectfully dissent.

. The one exception is in chapter 9, which governs bankruptcies by municipalities and contains an express good faith filing requirement. See 11 U.S.C. § 921(c). The Bank-ruplcy Code does require that repayment or reorganization plans — as opposed to bankruptcy cases themselves — be proposed in good *209 faith. See 11 U.S.C. §§ 1129(a)(3), 1225(a)(3), 1325(a)(3).

. Although we have not ruled on the use of section 707(a) to dismiss cases "for cause” on account of bad faith, we recently have held, in the context of a sophisticated corporate debt- or in chapter 11, that lack of good faith can be grounds for dismissal "for cause” under section 1112. See In re SGL Carbon Corp., 200 F.3d 154, 161 (3d Cir.1999). We also stated in a footnote in SGL that "once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith.' ” Id. at n. 10. However, even if this statement were to be extended to chapter 7 consumer cases, as we discuss later, and as distinguished from the situation in SGL, nothing in the record of this case puts Tamecki's good faith "at issue.”

. See, e.g., In re Lacrosse, 244 B.R. 583, 588-589 (Bankr.M.D.Pa.1999) (dismissing case of debtor with 58 credit cards and over $500,000 of consumer debt, who lived a lavish lifestyle and drove luxury cars, and who also falsely enticed clients to give him money by saying that he intended to make tax-free investments); In re Brown, 88 B.R. 280, 284-285 (Bankr.D.Hawai'i 1988) (dismissing case of successful ophthalmologist who engaged in prebankruptcy asset planning to remove more than $700,000 from the reach of creditors and who sought to avoid an obligation to a recipient of cataract surgery who lost all vision in her right eye).

. The Court in Marks continued by explaining that "[m]ost instances of dismissal for bad faith under § 707(a) involve concealment, misrepresentation, or unexplained transfers to place assets beyond the reach of creditors.” Id. at 41. Thus, even the cases of debtors that appear not to need bankruptcy relief have not been dismissed for bad faith in the absence of evidence of misconduct. See, e.g., In re Josey, 169 B.R. 138, 140 (Bankr.S.D.Ohio 1994); In re Bridges, 135 B.R. 36, 38 (Bankr.E.D.Ky.1991).

. The Bankruptcy Code contains a provision, section 523(a), under which creditors can challenge the dischargeability of specific debts. If there was any question that Tamecki incurred the debt without the intent to pay it, MBNA could have pursued its rights under that provision.

. The majority’s reference to the Bankruptcy Court’s assessment of the testimony regarding the marital status as ''apparent discounting of Tamecki's self-serving testimony” is curious in light of the Bankruptcy Court’s lack of any reference whatsoever to any concern regarding the marital situation. As noted above, the Bankruptcy Court does not even refer to the timing of the divorce as having any bearing on its decision or the outcome.

. The trustee's alternative position at oral argument was that if Tamecki and his wife get back together, they should be required to take a second mortgage on their home to pay the MBNA debt. Regardless of the relative merits of this argument as a policy matter, it has no foundation in current bankruptcy law.

. The Huckfeldt decision from the Court of Appeals for the Eighth Circuit also makes no mention of placing the burden of proving good faith on the debtor, taking only the cautious step that a specific finding of bad faith may be grounds for section 707(a) dismissal.